**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**William E. FLEETWOOD, III, Defendant-Appellant.**

**No. 75–1295.**

United States Court of Appeals Fifth Circuit.

Feb. 24, 1976.

Patrick C. McGinity, New Orleans, La., for defendant-appellant.

Gerald J. Gallinghouse, U. S. Atty., Mary Williams Cazalas, Asst. U. S. Atty., New Orleans, La., for plaintiff-appellee.

Before GEWIN, BELL * and SIMPSON, Circuit Judges.

SIMPSON, Circuit Judge:

Appellant, William Fleetwood, was tried before a jury and found guilty on three counts of a four count indictment alleging violations of Title 18, U.S.C., Section 201(g),[1] public bribery; more specifically, he was convicted of soliciting bribes in his capacity as a licensed grain inspector[2] to certify various ships

---

\* Judge Bell participated fully in the decision of this case and concurred in this opinion prior to the effective date of his resignation, March 1, 1976.

1. Title 18, U.S.C., Section 201(g) provides:

"Whoever, being a public official, former public official, or person selected to be a public official, otherwise than as provided by law for the proper discharge of official duty, directly or indirectly asks, demands, exacts, solicits, seeks, accepts, receives, or agrees to receive anything of value for himself for or because of any official act performed or to be performed by him;

Shall be fined not more than $10,000 or imprisoned for not more than two years, or both."

2. Appellant was employed by Delta Weighing and Inspection Bureau, Inc., a Louisiana corporation. He was licensed by the United States Department of Agriculture as an official inspector under the United States Grain Standards Act, 7 U.S.C., Sections 71, 74, 79, 84–87h and regulations thereunder, 7 C.F.R., Sections 26.1–26.129.

to be acceptably clean and ready for the loading of grain.

The sole issue brought to this court on appeal is Fleetwood's contention that statements elicited from government witnesses that persons similarly charged, or they themselves, had pled guilty to crimes involving bribery similar to those brought against him, and often founded on testimony from the same witnesses and involving the same transactions as those upon which his indictment was predicated, prejudiced his trial rights.[3] Our review of the trial transcript convinces us that appellant is correct in his assertions. Accordingly we reverse his conviction and remand for a new trial.

The indictment charged the appellant was unlawfully bribed or unlawfully solicited bribes, to pass the ships (Count 1) M/V Lotus Flower, (Count 2) M/V Virginia, (Count 3) M/V Glafki, (Count 4) M/V Achilles. Fleetwood was acquitted on Count 1, and convicted on the remaining three counts.

The principal witnesses upon whom the government predicated its case may be divided, for simplicity, into two groups; two persons, Mike Hardee and Lloyd Scallan,[4] who stated they had bribed appellant, and four former grain inspectors, each of whom had pled guilty to similar bribes. The fact that the guilty pleas of three of the latter group, the grain inspectors, were presented to the jury over his objection is the basis for Fleetwood's appeal.

The first witness whose testimony is relevant to this issue was Hardee, who stated he had, on January 30, 1973, bribed Fleetwood to pass the M/V Lotus Flower with funds obtained from his employer, who was to be ultimately repaid by the ship's owners. He testified on cross-examination that he had not been involved in prior bribes. The defense, later during cross-examination, established, over the government's objections on the grounds of relevance, that Hardee had indeed been involved in prior, similar, payoffs, including one to a certain Billy Fedrick, who would later testify for the government. The defense further established that Hardee had, on that occasion, taken substantial sums "off the top" of the bribes, which he kept for himself. On re-direct, the government, in an attempt to rehabilitate the witness, asked if he knew of any action which had been taken against Fedrick as a result of his, Hardee's, testimony before the grand jury. The witness stated that Fedrick had pled guilty. Counsel for appellant promptly objected, and moved for a mistrial, which was denied. The court stated that counsel for the defense had opened up the area pertaining to related cases based in part on this witness' testimony.

The next witness was Lloyd Scallan, a second boarding agent. He first testified that appellant in February, 1974, sought a bribe to pass the M/V Glafki from the captain of that vessel. This testimony corroborated that of a prior witness.[5] Scallan next testified he had, on a prior occasion, actually bribed Fleetwood. This incident occurred No-

---

3. Indictments were returned against eleven persons by the Grand Jury investigating instances of bribery exemplified by this case. At the time of this trial the cases of ten of those persons had been disposed of. Most of the witnesses in this trial were also witnesses against the other ten defendants.

4. Hardee and Scallan were employed by separate shipping companies as "boarding agents". A shipping company acts as the ship owner's representative in port, handling many matters pertaining to customs, cargo, immigration, and including grain inspections. The boarding agent actually boards the ships, acting as liaison between the shipping company and the ship.

5. A major witness for the government, whose testimony is not pertinent to this appeal, Captain Ioannis Psingas of the Glafki, testified Fleetwood solicited a bribe of $300 to pass that ship for the loading of grain. Conviction on this count cannot be separated from the prejudicial impact of the testimony challenged, however, because the prejudicial testimony in many instances would tend to be cumulative, and to go to matters of intent, motivation, and character relevant to all counts. Additionally, Scallan's credibility as a corroborative witness was arguably enhanced as a result of the prejudicial testimony admitted.

vember 27, 1973, aboard the M/V Virginia for the purpose of procuring from appellant a certificate stating that vessel to be acceptably clean to permit the loading of grain. Scallan testified to bribing Fleetwood and Billy Fedrick, both of whom were inspecting the holds, to pass the ship. They were not bribed in the presence of each other. Scallan also took some money for himself from the money drawn to bribe the inspectors.

Scallan further testified that on a later date, March 14 or 15, 1974, he attempted to bribe Fleetwood with $2,500 to pass the M/V Achilles, but that Fleetwood demanded more money. He testified that he, on the following day, as a result of Fleetwood's refusal to accept the money offered, paid a bribe to Clarence Baker, another inspector, who subsequently passed the ship for the loading of grain.

On cross-examination Scallan was questioned about prior bribes he had been involved in, particularly those involving the M/V Virginia. Much of that testimony is not pertinent to our consideration, but it is significant that Scallan testified to having bribed Fedrick and one Barrios to pass the M/V Virginia for loading at an earlier date. Scallan did not testify to the disposition of any other cases, and his testimony is relevant here mainly as background and in the light of subsequent testimony which was both objectionable and prejudicial.

In due course, Billy Fedrick was called by the government to testify. Fedrick testified, over the objection of defense counsel, that although he had once been a licensed grain inspector, he had been suspended. The assistant U. S. Attorney trying the case, shortly thereafter, asked if Fedrick had conducted any ship inspections with Fleetwood. He answered affirmatively. The government then asked: "Mr. Fedrick, have you been convicted of any offenses or pled guilty to any offenses?" Fedrick answered, "[y]es sir, I have." Counsel for the defense vigorously objected to the admission of this testimony, and again moved for a mistrial, which was again denied him.

Fedrick then testified to having pled guilty to accepting $250.00 from Lloyd Scallan to certify the M/V Virginia as acceptably clean for the loading of grain in November, 1973, the incident previously testified to by Scallan, who had testified to bribing Fleetwood in the same incident. Fedrick stated that Fleetwood was the other inspector aboard the ship, although he did not testify to seeing Fleetwood accept a bribe. Fedrick further testified that, on an occasion prior to that of November 1973, he had been bribed together with Barrios, by Scallan, to pass the M/V Virginia.

The next government witness was Barrios. He testified, in response to government questioning, that he had accepted bribes from Scallan. He was questioned about government prosecution of him for that bribery, and stated his case had been disposed of in plea bargaining. The witness, in a further clarification of the government's charges against him, explained that he had pled guilty to one of three counts against him, and that the others were dropped.

Raymond Schultz, a former grain inspector was then called. He also testified to receiving a bribe from Scallan, and to having been charged as a result of that crime. He did not testify to the disposition of the charges against him, thus distinguishing his testimony from that of the other grain inspectors.

The final witness for the government was a certain Clarence Baker, also a former grain inspector. He testified to several instances of his having obtained bribes before he would pass a ship for loading. He was questioned in detail about the instance previously testified to by Scallan concerning the M/V Achilles. His testimony in this regard was that appellant had demanded $5,000 from Scallan to pass the ship, but that he, Baker, had accepted $2,500 and passed the ship himself. He then stated, in response to questioning, that he had been charged in connection with the offense, and had pled guilty and received a suspended sentence.

Throughout the trial counsel for the defense objected to testimony from these witnesses as to the disposition of cases and guilty pleas which had been to a large extent predicated upon the same evidence, the same testimony, as the case here in controversy. Appellant believes the admission into evidence of the fact of the other grain inspectors' guilty pleas led to an impermissible inference of his own guilt. The government contends appellant was not prejudiced by this testimony, and that, in any event, the testimony was "invited" by defense counsel's cross-examination of Hardee and Scallan as to other bribes they had participated in. The prosecution reasons in this regard that it had a right to remove any inference which the jury might draw that Fleetwood was being discriminatorily prosecuted.

■ We are here presented with a problem with which we have often grappled in the past,[6] and one in which it is difficult to draw any hard and fast demarcations between instances in which testimony of the guilty plea or conviction of another is admissible and instances in which it is not. We long ago determined that "[a] defendant is entitled to have the questions of his guilt determined upon the evidence against him, not on whether a Government witness or codefendant has pled guilty to the same charge." *Babb v. United States*, 5 Cir., 218 F.2d 538, 542. This principle is so firmly established as to be almost a maxim.[7] We nonetheless recognize that under some circumstances the government might have a legitimate evidentiary rea-

son for bringing out testimony relating to its witnesses' prior convictions, even when those convictions are for charges similar or identical to those upon which the defendant is being charged.[8] In evaluating the impact of a witness' guilty plea "we must carefully examine all the facts and circumstances of the case in their proper context. The presence or absence of [a limiting] instruction is an important factor, but it is also essential to consider other factors, such as whether there was a proper purpose in introducing the fact of the guilty plea, whether the plea was improperly emphasized or used as substantive evidence of guilt, whether the introduction of the plea was invited by the defense counsel, whether an objection was entered or an instruction requested, whether the defendant's failure to object could have been the result of tactical considerations, and whether, in light of all the evidence, the failure to give an instruction was harmless beyond a reasonable doubt". *United States v. King*, 5 Cir. 1974, 505 F.2d 602, 608 (footnotes omitted). To the extent they are relevant, these factors provide guidance in the determination of this case.

■ This case differs from most cases of this type in that the guilty pleas testified to are not those of co-defendants or co-conspirators. We are not persuaded, however, that the fact that these witnesses were not co-defendants should distinguish this case. Such a distinction would stress form yet deny substance. The situation of witness Fedrick offers the best example of our meaning.

6. *United States v. King*, 5 Cir. 1974, 505 F.2d 602; *United States v. Richardson*, 5 Cir. 1974, 504 F.2d 357; *United States v. Davis*, 5 Cir. 1973, 487 F.2d 112; *United States v. Franicevich*, 5 Cir. 1972, 465 F.2d 467; *United States v. Cook*, 5 Cir. 1972, 461 F.2d 906, cert. denied, 409 U.S. 949, 93 S.Ct. 269, 34 L.Ed.2d 219; *United States v. Johnson*, 5 Cir. 1972, 455 F.2d 311; *United States v. Womack*, 5 Cir. 1972, 454 F.2d 1337; *United States v. Harrell*, 5 Cir. 1970, 436 F.2d 606; *United States v. Baete*, 5 Cir. 1969, 414 F.2d 782; *Babb v. United States*, 5 Cir. 1955, 218 F.2d 538; *Elder v. United States*, 5 Cir. 1954, 213 F.2d 876; *LeRoy v. Government of Canal Zone*, 5 Cir. 1936, 81

F.2d 914; *O'Shaughnessy v. United States*, 5 Cir. 1927, 17 F.2d 225.

7. See, i. e., *United States v. Toner*, 3 Cir. 1949, 173 F.2d 140, 142; *LeRoy v. Canal Zone*, 5 Cir. 1936, 81 F.2d 914.

8. "For instance, as impeachment of trial testimony, or as affecting credibility as a witness because of previous felony conviction." *United States v. Harrell*, supra, at 614 note 9. In this instance, of course, the government is not asking about guilty pleas to impeach its own witnesses, nor is it attempting to show any lack of credibility.

Fleetwood and Fedrick were bribed by the same person, Scallan, to pass the same ship, the Virginia, at the same time, in the same incident. The government's choice not to charge them together under the same indictment is, in this reference, immaterial.[9] They appeared to the jury, through the testimony of Hardee, Scallan, and Fedrick himself as equally guilty of the same crime.

The government relies, in justification of the admission of the pleas into evidence, upon *United States v. Aronson*, 2 Cir. 1963, 319 F.2d 48, cert. denied, 375 U.S. 920, 84 S.Ct. 264, 11 L.Ed.2d 164. In that case the court recognized that "[i]n practically every criminal prosecution, the government's principal witness or witnesses are drawn from the ranks of co-defendants, co-conspirators or participants in the allegedly unlawful enterprise. Often they have pleaded guilty before trial." Id. at 51. In light of this observation, the court in that case refused to find error in the prosecution asking its witness (who had been a co-defendant and pled guilty) if he had ever been convicted of a crime. "Counsel on direct examination usually adopt the policy of bringing out such adverse facts as they know will be developed on cross-examination. Failure to disclose would then be characterized (by the jury) as an intent to conceal." Id. at 51.

But the Aronson rationale is not applicable to the facts of this appeal. Here government counsel were not attempting to disclose adverse facts relative to the witnesses' credibility and thus protect or immunize government witnesses from an anticipated, damaging, cross-examination. Quite the opposite was true. One of the government's purposes in putting the grain inspectors on the stand was to disclose the fact that they had, under similar circumstances, pled guilty to receiving bribes. Even if this was not a stated purpose, the pattern of the government's examination of the former grain inspectors as to their guilt, the cumulative effect of the testimony, rendered it an inherent consequence. We believe pleas introduced under such circumstances to have been "improperly emphasized, or used as substantive evidence of guilt". King, supra. While information as to the guilty pleas might be logically relevant,[10] in fairness to the accused the evidence should have been excluded.

The government's primary theory, justifying the introduction into evidence of the guilty pleas of the witnesses, that the defense "opened the door", is tenable under some circumstances.[11] But under the circumstances present here the government's characterization of the facts and forms of the testimony must be rejected. We re-examine the government's allegedly opened door.

Hardee, the government's witness, testified on direct examination to having bribed Fleetwood. Under cross-examination he, in response to counsel's questions, stated that he had never before participated in any bribery. This asser-

9. See Rule 8(b), Fed.R.Crim.P. The evidence incriminating the four grain inspectors who had pled guilty and Fleetwood appears to be largely based on the same evidence, the testimony of Hardee and Scallan, and it is conceivable that all five might have been jointly indicted. Cf. *United States v. Gentile*, 5 Cir. 1974, 495 F.2d 626, 630.

10. Cf. *United States v. Toner*, 3 Cir. 1949, 173 F.2d 140, 142: "From the common sense point of view a plea of guilty by an alleged fellow conspirator is highly relevant upon the question of the guilt of another alleged conspirator. If A's admission that he conspired with B is believed, it is pretty hard to avoid the conclusion that B must have conspired with A. This is one of the cases, therefore, where evidence logically probative is to be excluded because of some countervailing policy."

11. Cf. *United States v. Cook*, 5 Cir. 1972, 461 F.2d 906, 910, in which the defense counsel sought to show that testimony of alleged co-conspirators was perjured because of a "deal" with the prosecution for lighter sentences. This court, on appeal, rejected Cook's contentions that the district court's failure to give limiting instructions on testimony relating to the co-conspirators' guilty pleas was error, determining that testimony as to the pleas was introduced primarily at the behest of the defense.

tion was demonstrated to be either a clear untruth, or, charitably, a gross misunderstanding.[12]    Defense counsel pressed Hardee to the point of admitting that he had in fact bribed two other

12. Compare the following excerpts from the cross-examination of Mr. Hardee by the defense counsel:

*Transcript, page 100:*

Q. Now, were you very shocked when Captain Morelando said—and I believe your words were—"See if you can pay off to get the ship taken care of," or something to that effect?

A. I never done it before in my life. That was the first time.

Q. You had never been involved in a payoff of anybody before?

A. Never.

*Transcript, page 106:*

Q. You stated that you had never paid off any money to anyone else before—

A. That's correct.

Q. —or since, is that correct?

A. I have never paid off. Mr. Fleetwood was the first man—surveyor, that I have ever paid off in eight years. He was the first one.

Q. Had anyone ever requested of you any money, any inspector ever requested of you any money before?

A. No.

*Transcript, pages 108, 109:*

(during questioning pertaining to the method of Hardee's obtaining money to bribe Fleetwood)

Q. Do you make "plenty and plenty" of checks for that purpose?

A. No.

Q. You have never made one in your life, is that right?

A. I never said that.

Q. Well, you have never gotten any money before for that purpose, have you?

A. From Mr. Fleetwood, never.

Q. No, for anybody? Have you ever bribed anybody else, or attempted to bribe anybody else? Have you ever gotten any other money, that's what my question was?

A. Yes.

Q. When was that?

A. We had another ship that was paid off.

Q. And when was that?

A. Approximately one year ago.

Q. Were you involved in that?

A. Yes.

Q. Would you give me the name of that ship?

A. The ship is called the SHIN MING.

Q. Now, if I recall your testimony, no longer than thirty minutes ago, you stated you were never ever involved in a bribe

inspectors.[13]    During cross-examination, not only the fact of the bribes surfaced, but also the information that Hardee had taken money "off the top" of the bribes.[14]    It requires little imagination to

before. Now, you come up at this time and state to me that you were involved in a bribe, is that correct?

A. No, I said Mr. Fleetwood was the first I ever paid off. I never said that I never paid anyone else off before, no. I never said that.

Q. Well, who was it that you paid off, and under what circumstances?

[The prosecution at this point objected, and there ensued a bench conference in which the defense counsel requested and obtained Jencks Act material including Hardee's testimony before the grand jury as to these other bribery episodes. The prosecution's objections to the relevance of the cross-examination, as well as its scope, was overruled.]

13. Cf. Federal Rule of Evidence 611(b), effective June 30, 1975, provides:

"Scope of cross-examination—Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination."

Although not effective at the date of this trial, the rule above is a restatement of the traditional federal practice which resulted in a certain amount of confusion. See particularly, Weinstein's Evidence, United States Rules Vo. 3, II 611(02).

14. During cross-examination as to one particular bribe, Hardee was asked how he arranged to bribe Fedrick and a certain Captain Warren (who did not testify, and is otherwise uninvolved in this case.)

*Transcript, page 117:*

Q. I see. I take it, then, that you contacted Captain Warren and Billy Fedrick, is that correct?

A. That's correct.

Q. And you told them you would give them some money for passing the ship?

A. I told them the circumstances involved and everything, and the owners were willing to give them some money, yes.

Q. And how much money did you eventually give them?

A. Like I said, $1500.00 to Captain Warren and $500.00 to Billy Fredericks.   [sic]

Q. How much money did you get from the owners, Mr. Hardee?

A. Twenty-five hundred dollars.

Q. Where did the other $500.00 go?

A. I kept it.

recognize the potential value to a defendant when one of the prosecution's primary witnesses is caught in a contradiction on the stand,[15] is a confessed bribor, and has cheated the company he represents in the bribes.

On re-direct examination of Hardee the prosecution asked if he knew of any action taken against Fedrick "as a result of your [Hardee's] testimony." Hardee answered "I know he pleaded guilty". The impact of this statement was not only to rehabilitate Hardee, the government's stated purpose, but also to besmirch Fleetwood with another man's conviction. The fact that the guilty plea was predicated upon the witness' testimony accords it undeserved emphasis—in effect making the plea itself evidence.

■ To this point the "opened door" problem presents a close question. For whatever purpose, counsel for defense had gone into testimony of Hardee concerning other bribes in which the witness had been involved. The government had an interest in rehabilitating its witness, in rectifying the damage that had been done to his credibility. During arguments on this point before the trial court defense counsel sought to differentiate between (a) inquiring into other bribery episodes in which the witness had been involved, and (b) inquiring into the disposition of any cases which might have ultimately arisen from the acts testified to have occurred. The argument is a fine one, and one which might prove chimerical, but one which in the context of the whole trial we do not deem crucial to appellant's case. Whatever the extent to which the defense had opened the door to the issue of Hardee's involvement in other bribes, the repeated, methodical, and essentially unnecessary questioning of Fedrick, Barrios, and Baker as to the determination of their guilt far overreached proper bounds and elicited

improper testimony from these witnesses.

The government also urges that if error did occur, it was harmless error. We disagree.

In several instances we have held that error committed in admitting the guilty pleas of a confederate did not require reversal, as not amounting to plain error, when the admission of the plea was not objected to at trial. This is so because the district judge, had proper objection been made, would have been able to give limiting instructions to the jury. See *United States v. King*, supra. In at least one instance, however, we have found plain error requiring reversal in permitting the introduction of the fact of another's plea even though no cautionary instructions were requested. *United States v. Harrell*, supra. The possibility of such plain error is recognized in several other cases in which, after an examination of the facts, we did not find the circumstances so aggravated as to require reversal. See, i. e., *United States v. Richardson*, 5 Cir. 1974, 504 F.2d 357.

We have also noted that in some instances information pertaining to the guilty pleas of others might so taint the trial of an individual that the error could not be cured despite a cautionary instruction.[16]

■ Appellant's counsel apparently did not request cautionary instructions be given regarding testimony relative to the other grain inspectors' guilty pleas, although his repeated objections left little doubt as to his belief that the testimony was objectionable, and his reasons for such belief. Their guilty pleas were testified to, over objection, by each of the three former grain inspectors, and Fedrick's plea was also testified to by Hardee. The cumulative impact of this

Hardee also admitted accepting $50.00 each from Fedrick and Warren as a "gratuity" for arranging the bribe.

**15.** See Wigmore on Evidence, Chadbourne Revision, Vol. 111A, §§ 1017–1046.

**16.** "There may be aggravated circumstances in which the strongest corrective instruction would be insufficient, as, for example, when the guilty plea of one co-defendant necessarily implicates another or others." *United States v. Baete*, 5 Cir. 1969, 414 F.2d 782, at 783–784.

testimony, and the emphasis placed upon it by the government, was manifestly prejudicial, and without doubt harmful to the appellant. This is one of the examples anticipated by *Baete*. We doubt that any instruction, had one been given, would have cured the prejudicial impact of the testimony presented. Despite the solid evidence indicating appellant's guilt, the court's error in this matter was not harmless beyond a reasonable doubt.

Our decision today turns on the facts of the instant case and the particular testimony in question. See *United States v. Harrell*, supra. We do not say categorically that a government witness' prior conviction or guilty plea to a crime closely connected with that of the defendant may never be introduced by the government. But this case requires reversal. Cf. *United States v. Harrell*, supra; *United States v. Davis*, 5 Cir. 1973, 487 F.2d 112, 120.

Reversed and remanded.