**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Stephen D. BLACK and Joe D. Hawkins, Defendants-Appellants.**

No. 81–3453.

United States Court of Appeals, Fifth Circuit.

Aug. 24, 1982.

Rehearing Denied Sept. 23, 1982.

Certiorari Denied Nov. 15, 1982. See 103 S.Ct. 387.

Patrick C. McGinity, New Orleans, La., for Stephen D. Black.

David F. Craig, Jr., New Orleans, La., for Joe D. Hawkins.

John P. Volz, U. S. Atty., Lindsay A. Larson, III, Asst. U. S. Atty., New Orleans, La., for plaintiff-appellee.

Before CLARK, Chief Judge, GEE and GARZA, Circuit Judges.

PER CURIAM:

The facts of the appeal are unusual. In the spring of 1979, defendant Perdue presented a proposal to the deposed prime minister of Granada that included forming a group of mercenary soldiers to overthrow the Granadan government. The island of Dominica was to serve as a jumping-off spot. This plan was subsequently replaced by one to overthrow the Republic of Dominica. Several parties were brought into the plan, including appellants Hawkins and Black. Perdue's lieutenant Wolfgang Droege, an acquaintance of Hawkins, explained the plan to Hawkins. Hawkins not only joined the group but introduced Perdue to a person who contributed $13,000 to help finance the coup. Black was intro-

duced to the group through one David Duke, an associate of the Ku Klux Klan. Perdue had discussed his plans with Duke from the outset, and Duke suggested that Black might be interested in joining in the coup. After hearing the details, Black stated that he would both join and try to recruit others. Perdue chartered a boat to carry the mercenaries and equipment to Dominica. The captain of the vessel, however, reported him to the Bureau of Alcohol, Tobacco and Firearms, and an undercover agent was assigned to the vessel. The agent was informed by Droege that they hoped to set up a cocaine refining plant on the island. On the night the vessel was to leave for Dominica, ten men, including Black and Hawkins, were arrested with all their military equipment.

All ten were indicted in a seven-count indictment. Seven pleaded guilty to violating the Neutrality Act in exchange for the dropping of the remaining six counts. Black, Hawkins, and a third defendant, Norris, stood trial before a jury. Norris was acquitted, but Black and Hawkins were convicted on two counts: violating the Neutrality Act and conspiracy. They appeal, asserting that their trial was rendered unfair by the admission in evidence of a Nazi flag found on another defendant, of testimony about the cocaine refining plan, of their codefendants' guilty pleas, and by references to Duke and the Klan. We affirm.

### David Duke and the KKK

■ It was at the request of the defense, however, that each individual venireman was examined concerning David Duke and the KKK. All those veniremen who became jurors stated that it would not influence their decision. Pursuant to Rule 24(a), Fed.R.Crim.P., the trial judge is vested with broad discretion in the conduct of voir dire, and absent an abuse of discretion and a showing that the rights of the accused have been prejudiced thereby, the scope and content of voir dire will not be disturbed on appeal. *United States v. Harper*, 505 F.2d 924, 925 (5th Cir. 1974). The only other evidence relating to the Klan

was an unsolicited response by a government witness that was not emphasized to the jury. There was no error here.

### The Nazi Flag

■ Appellants contend that the Nazi flag was irrelevant because it was owned and being carried by another defendant at the time of the arrest. Again, the trial court is afforded wide discretion in determining whether evidence is relevant or prejudicial. *United States v. Brown*, 547 F.2d 1264, 1266 (5th Cir. 1977). 18 U.S.C. § 960 states that it is illegal to aid in any "military or naval expedition" against a friendly nation. The Nazi and Confederate flags were introduced, along with military fatigue clothes, canteens, knives, assault rifles, and other military gear to show the military nature of the group, as well as to counter appellants' contention that their motive was to defend America against Communism by joining the Dominica defense forces and putting down a Communist insurgency there. In these circumstances, we cannot say that the court erred in concluding that the flag's relevance outweighed its prejudice to the appellants.

### The Cocaine Refining Plant

■ Appellants claim that they had no interest in producing drugs and therefore that this testimony should have been excluded. Black and Hawkins conspired with others for the common purpose of overthrowing the government of Dominica and of setting up the Nortic Corporation. They admitted that they were each to be granted a percentage of Nortic. The statement by the coconspirator Droege was relevant to show that this was a money-making scheme in order to rebut the argument that appellants were merely fighting Communism. It is not critical whether Black and Hawkins actually knew of the cocaine operation. "The conspirators need not know each other nor be privy to the details of each enterprise comprising the conspiracy . . . as long as the evidence is sufficient to show that each defendant possessed full knowledge of the conspiracy's general purpose and scope."

*United States v. Becker*, 569 F.2d 951, 961 (5th Cir. 1978), *cert. denied*, 439 U.S. 865, 99 S.Ct. 188, 58 L.Ed.2d 174 (1979).

### Testimony about the Guilty Pleas

 The only real issue in this case is whether the court erred in allowing the coconspirators to testify as to their guilty pleas. "A defendant is entitled to have the questions of his guilt determined upon the evidence against him, not on whether a government witness or a codefendant has plead guilty to the same charge." *United States v. Fleetwood*, 528 F.2d 528, 532 (5th Cir. 1976). "We nonetheless recognize that under some circumstances the government might have a legitimate evidentiary reason for bringing out testimony relating to its witnesses' prior convictions, even when those convictions are for charges similar or identical to those upon which the defendant is being charged." *Id.* Factors to be considered in evaluating the impact of a witness' guilty plea are the presence or absence of a limiting instruction, whether there was a proper purpose in introducing the fact of the guilty plea, whether the plea was improperly emphasized or used as substantive evidence of guilt, and whether the introduction of the plea was invited by defense counsel. *Id.*

 Here the judge gave an instruction requiring the jury not to consider the guilty pleas of the coconspirators when deciding the three defendants' guilt. Likewise, the government, in closing argument, told the jury not to regard the coconspirators' guilty pleas and either to convict or acquit the defendants on the evidence adduced at trial. Two of the coconspirators testified for the defense, and their guilty pleas were brought out in crossexamination in order to impeach their testimony on direct that they had no knowledge of a planned coup. Impeachment is a sufficient and proper reason for admitting evidence of a witness' guilty plea. *United States v. Fleetwood, supra.*

 The other five coconspirators were called by the government to implicate the three defendants. Each witness testified on direct examination that he pleaded guilty to attempting to overthrow the lawful government of Dominica, and each testified that he had plea bargained with the government. The government claims that the sole purpose of this testimony was to disclose the nature of the plea agreements on direct examination so as to avoid having the issue first raised on cross-examination, leaving the jury with the impression that the government was not being fully candid.

While we recognize fully the highly prejudicial nature of this evidence, we conclude that in view of the court's limiting instruction and of the presence of several of the other *Fleetwood* factors—a proper purpose and a want of undue emphasis or attempted use of the pleas as substantive evidence of guilt—the court's broad discretion in passing on such matters was not abused here.

AFFIRMED.