**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Alberto CORTEZ, Jorge Felipe Llerena-Delgado, Hector Gonzalez-Quinones, a/k/a Frank Bonilla, Jose Rafael Martinez, Jose Domingo Martinez-Valdez, a/k/a Jose Luis Martinez, Defendants-Appellants.**

**No. 83–5289.**

United States Court of Appeals, Eleventh Circuit.

April 16, 1985.

---

Benedict P. Kuehne, Bierman, Sonnett, Shohat & Sale, R. Jerome Sanford (Court appointed), Miami, Fla., for Cortez.

Gino P. Negretti, Miami, Fla., for Gonzalez-Quinones.

Leon E. Tozo (Court-appointed), Miami, Fla., for J.R. Martinez.

Irwin G. Lichter, Miami, Fla., for J.D. Martinez-Valdez and Llerena-Delgado.

Stanley Marcus, U.S. Atty., Richard D. Gregorie, Linda Collins Hertz, Sonia O'Donnell, Asst. U.S. Attys., Miami, Fla., for plaintiff-appellee.

Before RONEY and TJOFLAT, Circuit Judges, and BROWN *, Senior Circuit Judge.

PER CURIAM:

Defendants were convicted of various narcotics and related Travel Act violations stemming from a plan to smuggle large amounts of methaqualone tablets and marijuana from Colombia to the United States via Cuba. Although numerous issues are brought on appeal, the principal one is an alleged due process violation resulting from defendants being charged with conspiracy and a Travel Act violation beginning in 1979, when the statute under which they were charged was not enacted until September 1980. 21 U.S.C.A. § 955a(d)(1). The conspiracy charged was a long-term affair beginning in the Fall of 1979 and continuing until early 1981, long after § 955's September 1980 enactment. Because of this, the defendant's arguments on this issue must fail. Perceiving no merit in the other points made on this appeal, we affirm.

This action became known as the "Cuban connection" case. The Cuban government apparently agreed with defendants to provide protection and fuel to ships carrying narcotics at a charge of $500,000 per vessel. For various reasons, no methaqualone (quaalude) tablets made it to the United States. One vessel ran aground, one ran out of fuel, two vessels had their engines sabotaged, and one sank. When the "mother" ship containing quaaludes was spotted by a Coast Guard helicopter at Riding Rock in the Bahamas, the crew panicked and threw one million quaalude tablets overboard.

The defendants were more successful at smuggling marijuana. About 24,000 pounds were brought to the Miami area by speedboats operating from Bimini. The marijuana was stored at a farm in Homestead.

* Honorable John R. Brown, U.S. Circuit Judge for the Fifth Circuit, sitting by designation.

■ Martinez-Valdez and Llerena-Delgado challenge Counts I and VII of their convictions because those counts charged them with violating a statute not enacted until after the conspiracy in Count I was formed, or after some of the activity charged in Count VII had already occurred. Defendants were charged in Count I with conspiracy to import quaaludes in violation of two statutes, one of which was 21 U.S.C.A. § 955a. Count VII alleged § 955a as a predicate crime for the Travel Act violations.

Although § 955a was not enacted until September 15, 1980, the conspiracy to import methaqualone tablets charged in Count I allegedly began in the fall of 1979. The activities of the conspirators extended for several months after September 1980, however. The quaaludes were thrown overboard on November 19, 1980. Various meetings were held in October and November or December of 1980 regarding the quaalude plot. Enough activities of the conspirators continued after § 955a's enactment so that even if the jury had been instructed by the trial court as to the date of enactment and to consider only activities thereafter, there is no doubt that the jury would have decided the case the same way.

■ Requiring proof of illegal conduct after the enactment of the statute prevents it from running afoul of the ex post facto clause. *United States v. Brown,* 555 F.2d 407 (5th Cir.1977), *cert. denied,* 435 U.S. 904, 98 S.Ct. 1448, 55 L.Ed.2d 494 (1978). *Brown* concerned a RICO statute, 18 U.S.C.A. § 1962(c), which, while permitting conviction for racketeering activity having its inception prior to the date of the Act, required proof that one of the acts occurred subsequent to the enactment of the statute. 555 F.2d at 420 n. 26. Unlike this case, the convictions were reversed because the evidence did not indicate that the acts upon which the defendants were convicted occurred after the effective date of the statute. *See United States v. Boffa,* 688 F.2d 919, 937 (3d Cir.1982), *cert. denied,* 460 U.S. 1022, 103 S.Ct. 1272, 75 L.Ed.2d 494 (1983). The convictions under Count I are due to be affirmed.

■ The evidence of activity after September 1980 also supports defendants' Travel Act convictions under 18 U.S.C.A. § 1952 in Count VII. Section 955a was used as a predicate for those substantive convictions. Numerous trips and telephone calls in furtherance of the conspiracy to import quaaludes were made between October and November of 1980, after section 955a's enactment. Defendants traveled from Miami to Cuba and from Miami to Bimini, as well as used telephones during this period. In all, six out of the eight specific acts constituting Travel Act violations occurred after section 955a's enactment. There was no error in defendants' convictions under Count VII.

■ Martinez-Valdez and Llerena-Delgado also challenge their convictions because the trial court admitted the guilty plea of a codefendant who testified for the Government. No objection was made below so the plain error standard applies. *United States v. Miranda,* 593 F.2d 590, 594 (5th Cir.1976). This Court can reverse only if the evidence seriously affected the substantial rights of the accused. *United States v. King,* 505 F.2d 602, 605 (5th Cir. 1974). Defendants have not met that standard. The Government introduced evidence of the codefendant witness's plea agreement for a proper purpose: to avoid the issue being raised for the first time during cross-examination, which would have given the jury the impression that the Government was not being candid. *See United States v. Black,* 685 F.2d 132, 135 (5th Cir.), *cert. denied,* 459 U.S. 1021, 103 S.Ct. 387, 74 L.Ed.2d 518 (1982). The trial court instructed the jury to consider the guilt of each defendant separately and to weigh the testimony of an accomplice against a defendant carefully. Although we have consistently cautioned against the danger in the introduction of such evidence by the Government on direct examination, considering all of the circumstances under the factors set forth in *United States v. Fleetwood,* 528 F.2d 528 (5th Cir.1976), we are convinced that the trial court did not abuse its discretion and that no error was committed.

Gonzalez's attorney claims a *Brady* violation occurred because the Government failed to inform him that Gonzalez had appeared before a congressional subcommittee which was investigating the Cuban government's involvement in the drug trade. His argument is meritless. First, the newspaper articles at issue were not in the least exculpatory. They reported Gonzalez's testimony and did not speculate on his guilt or innocence. Second, disclosure under *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), is not required where a defendant has equal access to the material at issue. *United States v. McMahon,* 715 F.2d 498 (11th Cir.), *cert. denied,* — U.S. —, 104 S.Ct. 507, 78 L.Ed.2d 697 (1983). Needless to say, Gonzalez knew he had testified before the Committee.

Gonzalez further claims the trial court erred in refusing to grant his motion for severance because a codefendant would allegedly have given exculpatory testimony if the trial had been severed. For a severance to be granted, the defendant must show, among other things, the exculpatory nature of the proposed testimony. *United States v. Johnson,* 713 F.2d 633, 740–41 (11th Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 1447, 79 L.Ed.2d 766 (1984). Gonzalez proffered only unsigned affidavits which his codefendants would not execute and which were not made a part of the record on appeal. The trial court did not abuse its discretion in refusing to sever Gonzalez's trial from the other defendants.

Cortez and Jose Raphael Martinez challenge their convictions on sufficiency of the evidence grounds. Under *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 469, 86 L.Ed. 680 (1942), this Court must view the evidence in the light most favorable to the Government. If a reasonable jury could have found the evidence to establish guilt beyond a reasonable doubt, the convictions must be affirmed. *United States v. Vera,* 701 F.2d 1349, 1357 (11th Cir.1983). The record shows that ample evidence was presented before the jury to support the convictions.

Cortez attended meetings concerning the marijuana smuggling. He located boat captains. He was the contact point for the speedboats bringing in the drugs. He was the only one who could go in and out of the farm in Homestead where the marijuana was held.

Martinez was involved in the search for the grounded quaalude boat, the RICKY VI. He assisted in offloading quaaludes from the VIVIANA to the LAZY LADY. He never objected to going to Cuba to pick up the quaaludes.

Martinez also claims that the trial judge's conduct was prejudicial to him and deprived him of a fair trial. The record indicates that while counsel was interrupted on various occasions by the trial court, none of those interruptions exceeded the bounds of judicial propriety. The comments were in response to acts of defense counsel and were used to instruct, elicit facts, or clarify. Furthermore, the court's comments when the jury was present were brief, not directed to the jury, and the jury was instructed not to consider the court's comments as evidence. The trial court's comments did not deprive defendant of a fair trial.

AFFIRMED.