United States Court of Appeals
Fifth Circuit

**F I L E D**

**February 16, 2005**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 03-41379

_____

UNITED STATES OF AMERICA

Plaintiff - Appellee

v.

JIMMY DELGADO

Defendant - Appellant

_____

Appeal from the United States District Court
for the Southern District of Texas, Victoria
6:01-CR-108-3

_____

Before HIGGINBOTHAM, SMITH, and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

Defendant Jimmy Delgado appeals his criminal conviction for conspiracy to conduct a racketeering enterprise in violation of 18 U.S.C. § 1962(d) and conducting a racketeering enterprise in violation of 18 U.S.C. § 1962(c). We affirm the conviction.

**BACKGROUND**

The Texas Mexican Mafia ("TMM") is a criminal organization which originated within the Texas prison system in the 1980s. It provides protection to its members from other prisoners or prison gangs and otherwise furthers the interests of its members. As members are released from

1

prison, they must maintain contact with the organization and assist both free and incarcerated members. TMM provides direction, advice, organization and protection for its members' various criminal ventures. In exchange for membership, TMM members send 10% of their illegal proceeds ("the dime") to TMM headquarters. Members must also collect "the dime" from non-member drug dealers and remit that money to TMM headquarters.

Appellant Jimmy Delgado was a TMM member living in Victoria, Texas. As such, he participated in the affairs of TMM's Victoria chapter, which had been founded by Joe Pena upon his release from prison. As TMM members were released from prison, they reported to Pena, who tasked them in the sale of drugs and in collecting "the dime" from other drug dealers. Victoria Chapter TMM members participated in periodic meetings to discuss ongoing cocaine sales, the collection of drug debts, the collection of "the dime," and retaliation against members of other gangs. While Delgado participated in drug-dealing, his most significant contribution to TMM affairs was his collection of drug debts and intimidation of individuals who posed problems to TMM members.

*The Indictment*

In December of 2001, Delgado, along with eight other defendants, was indicted for conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO") under 18 U.S.C. § 1962(d) and a substantive violation of RICO under 18 U.S.C. § 1962(c).

With respect to the first count, the indictment alleged that TMM was a continuing racketeering enterprise that engaged in and affected interstate commerce by engaging in criminal activity, especially the purchase and sale of illegal drugs that were obtained and sold in interstate commerce. It alleged that the purposes of TMM were to enrich its members through criminal

2

activity and protect its interests through violence and threats of violence. It further alleged that Delgado knew of and agreed to TMM's purposes.

Under the second count of the indictment, the grand jury further charged the defendants with knowingly and intentionally participating in the conduct of the affairs of TMM through a pattern of racketeering activity consisting of seven acts. The racketeering acts charged were (1) conspiracy to distribute cocaine, (2) murder of Gilbert Vasquez, (3) attempted murder of Troy Jenkins, (4) robbery at the home of Leonardo Ramos, (5) murder of Alfonso Sanchez, (6) murder of Chris Vasquez, and (7) murder of Jason Ramos. Delgado was alleged to have participated personally in all acts but the murder of Jason Ramos.

*Evidence at Trial*

At trial, several of Delgado's co-defendants, who had entered into plea-agreements with the government, testified against Delgado. Their testimony showed that Delgado was an active member of TMM and that he participated in the organization's criminal activities. More specifically, the government presented evidence of Delgado's involvement in the predicate acts listed in the indictment. Witnesses testified to the following acts related to the collection of debts: Delgado directed and participated in the search for and murder of Gilbert Vasquez, who owed Delgado $300 for cocaine. He also directed, participated in, and authorized the murder of Chris Vasquez, who also owed money for cocaine. Delgado was assigned to collect drug debts that Joseph Canales, a TMM "associate," turned over to TMM as payment of "the dime."

Witnesses also testified to Delgado's effective intimidation of members of the Hermanos Pistoleros Latinos ("HPL"), a rival gang, and other individuals with whom TMM had disputes: In December of 1999, Delgado advised Paul Cortez, a TMM member, that they would be killing

3

Richard Velez, an individual with whom a ranking member of TMM had been in a fight. However, Delgado and Cortez mistakenly entered the apartment of Troy Jenkins, a neighbor of Velez. Delgado stabbed Jenkins several times.

The government presented evidence incriminating Delgado in other TMM crimes: In January of 2000, shortly after his promotion to "sergeant" in TMM, Delgado pressured Pineda, a TMM member, into killing a member of HPL with whom Pineda had experienced problems. In February of 2000, Delgado and a TMM associate robbed Leonardo Ramos, a member of HPL who had not paid "the dime."

Delgado took the stand and testified that he was a member of TMM, that he met with other TMM members in Victoria, and that he had held a position of leadership in TMM's Victoria chapter. Delgado stated that he did not share other TMM members' belief in pursuing the interests of TMM through murder, extortion, and other crimes. Rather, he found TMM to be a benevolent brotherhood or support group. Delgado admitted having been convicted of the murder of Chris Vasquez, one of the predicate acts charged in the indictment, but denied any involvement in that act or any other predicate acts charged.

After a trial, the jury returned a verdict of guilty against Delgado on both RICO counts. The jury found Delgado guilty of six of the seven racketeering acts charged in the indictment.

**DISCUSSION**

Delgado claims that the following errors warrant reversal of his conviction: (1) a fundamental variance exists between the indictment and the proof offered at trial that violated Delgado's right to prepare for trial; (2) the evidence at trial was insufficient to prove Delgado's guilt beyond a reasonable doubt; (3) the district court erred in admitting hearsay statements of co-

4

conspirators under Federal Rule of Evidence 801(d); (4) the district court violated Delgado's right to confront witnesses against him by admitting hearsay statements contained in the testimony of Michael Martinez; (5) the district court erred in failing to give a limiting instruction concerning co-conspirators' guilty pleas; and (6) the district court erred in allowing the government to introduce evidence of appellant's prior conviction.  We discuss each in turn.

## I.  Material Variance

Delgado first argues that there is a material variance between the indictment and the evidence that was presented at trial such that he was denied his Sixth Amendment rights. We reject his argument.

A variance arises when the proof at trial depicts a scenario that differs materially from the scenario charged in the indictment but does not modify an essential element of the charged offense.  *Dunn v. United States*, 442 U.S. 100, 105 (1979); *United States v. Puig-Infante*, 19 F.3d 929, 935 (5th Cir. 1994). A variance necessitates reversal only when it has prejudiced the defendant's substantial rights. *Id.* at 935-36.

According to Delgado, the indictment alleged that he was involved in TMM's drug business, but the evidence presented at trial sought to associate Delgado with the personal drug business of Joe Pena. We reject this contention.  While Joe Pena did indicate during cross-examination that he personally profited from the sale of drugs and considered his drug business to be his own, he also testified on direct examination that he was a member of TMM; that he collected "the dime" for TMM from other drug dealers; that he purchased drugs from TMM members; that TMM members reported to him to sell drugs for him; and that TMM members collected debts owed to him. The testimony of several other witnesses confirmed a strong

connection between Joe Pena's drug business and TMM.  Thus, the government presented

evidence of the very scenario alleged in the indictment.  There was no material variance between

the indictment and the proof offered at trial.

## II.  Sufficiency of the Evidence

Delgado next contends that the evidence was insufficient to prove his guilt beyond a

reasonable doubt.

"In reviewing sufficiency of the evidence we view the evidence and all inferences to be

drawn from it in the light most favorable to the verdict to determine if a rational trier of fact could

have found the essential elements of the crime beyond a reasonable doubt."  *United States v.*

*Posada-Rios*, 158 F.3d 832, 855 (5th Cir. 1998) (citing *United States v. Sneed*, 63 F.3d 381, 385

(5th Cir.1995)).  After reviewing the record, we conclude that the jury heard sufficient evidence

to find Delgado guilty on both the substantive and conspiracy counts.

### A.  Conspiracy Offense

The RICO Act criminalizes conspiracy to violate any of its substantive provisions.  18

U.S.C. § 1962(d).  "To prove a RICO conspiracy, the government must establish (1) that two or

more people agreed to commit a substantive RICO offense and (2) that the defendant knew of and

agreed to the overall objective of the RICO offense."  *Posada-Rios*, 158 F.3d at 857-58.  These

elements may be established by circumstantial evidence. *Id.* Each requirement is met here.

First, there is sufficient evidence for a jury to find that two or more people agreed to

violate § 1962(c), which criminalizes racketeering activity and the collection of unlawful debts.

Evidence presented at trial showed that TMM had many members, including Delgado, who met

frequently to discuss the interests of their organization and plan its activities, including drug

6

trafficking, the collection of drug debts, murder, and robbery, as prohibited by RICO. Such evidence supports the jury's determination that two or more people agreed to violate §1962(c).

Second, there is ample evidence that Delgado agreed to the overall objective of the conspiracy. Delgado argues that, because the evidence at trial did not prove that he performed or agreed to perform at least two crimes in furtherance of TMM's conspiracy, a reasonable jury could not have found him guilty of conspiracy to violate RICO. However, Delgado's interpretation of the law is mistaken. The conspirator need not have committed or agreed to commit the two predicate acts. *Salinas v. United States*, 522 U.S. 52, 61-66 (1997). Delgado need only have known of and agreed to the overall objective of the RICO offense. *See id.; Posada-Rios*, 158 F.3d at 857.

Here, there is more than sufficient evidence for a jury to find that Delgado knew of and agreed to the RICO offense. At trial, Delgado himself testified that he was a member of TMM. The jury was exposed to evidence showing that Delgado had attended TMM meetings at which the organization's drug enterprise was discussed. Moreover, the evidence showed that Delgado actively directed TMM members to carry out several of the crimes that served as predicate acts of the substantive RICO offense: The jury heard evidence that Delgado sold drugs for Joe Pena, the founder of the Victoria chapter of TMM. Michael Martinez testified that Delgado had directed and participated in the murder of Gilbert Vasquez, who owed Delgado money for cocaine. The jury also heard evidence that Delgado had participated in and directed other TMM members in the murder of Chris Vasquez, who also owed money for drugs. Paul Cortez testified that Delgado instructed him to accompany Delgado to the home of Richard Velez to kill Velez and that, upon mistakenly entering the wrong apartment, Delgado instructed Cortez to shoot Troy Jenkins, an

7

innocent occupant of the home.

### *B. Substantive Offense*

The substantive RICO provision under which Delgado was charged, 18 U.S.C. § 1962(c), prohibits "any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." "To establish a violation of § 1962(c) the government must prove (1) the existence of an enterprise that affects interstate or foreign commerce, (2) that the defendant was 'employed by' or 'associated with' the enterprise, (3) that the defendant participated in the conduct of the enterprise's affairs, and (4) that the participation was through 'a pattern of racketeering activity.'" *Posada-Rios*, 158 F.3d at 855 (citing *United States v. Erwin*, 793 F.2d 656, 670 (5th Cir. 1986)). As discussed below, the evidence presented at trial was sufficient for a jury to find that each element was satisfied.

**1. Enterprise Affecting Interstate Commerce**

Delgado argues that there was insufficient evidence to show that TMM, the enterprise discussed in the indictment, affected interstate commerce. We disagree. Here, witnesses testified that TMM was directly involved in distributing and acquiring drugs that were produced in Colombia and had arrived in the U.S. via Mexico. *See United States v. Robertson*, 514 U.S. 669, 671-72 (1995) (holding that an enterprise that produces, distributes, or acquires goods or services in interstate commerce is engaged in interstate commerce). Moreover, evidence presented at trial showed that TMM used Western Union, telephones, the U.S. Postal Service, and pagers to transfer money and communicate with each other in furtherance of TMM's criminal purposes. *See*

8

*R.A.G.S. Couture, Inc. v. Hyatt*, 774 F.2d 1350, 1353 (5th Cir. 1985) ("The nexus with interstate commerce required by RICO is "minimal.""); *United States v. Pipkins*, 378 F.3d 1281 (11th Cir. 2004) (finding that RICO conspirators' use of instrumentalities of interstate commerce, including pagers, telephones, and mobile phones, affected interstate commerce). Thus, TMM was engaged in and affected interstate commerce.

## 2. Defendant's Employment by or Association with the Enterprise

Delgado was undoubtedly associated with TMM. As discussed earlier, Delgado personally testified that he was a member of TMM, and several witnesses attested to his association with and leadership role in TMM. *See supra* Part II A.

## 3. Defendant's Participation in Conduct of Enterprise's Affairs

The defendant must have participated in the operation or management of the enterprise itself in order to fulfill this third requirement of a substantive RICO violation. *Reves v. Ernst & Young*, 507 U.S. 170, 185 (1993). "An enterprise is 'operated' not just by upper management but also by lower rung participants in the enterprise who are under the direction of upper management." *Id.* at 184. As discussed earlier in this opinion, Delgado's attendance at TMM meetings and participation in drug-dealing and other criminal activities was amply attested to at trial. Thus, not only was there sufficient evidence to infer that Delgado participated in TMM's affairs, but there was significant evidence that he actually directed the commission of crimes in furtherance of TMM's purposes. *See supra* Part II A.

## 4. Participation through a Pattern of Racketeering Activity

In order to show the existence of a pattern of racketeering activity, the government must establish (1) that the racketeering acts are related and (2) that they amount to or pose a threat of

9

continued criminal activity. *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989).

Here, both requirements are met. The racketeering acts listed in the indictment are related in that they were all shown to be committed in the furtherance of TMM business. The predicate acts served to intimidate members of rival gangs, intimidate individuals who posed problems for TMM members, collect drug debts owed to TMM members, and raise revenue for TMM members. Delgado again raises the argument that the criminal activities proved at trial were the personal business of Joe Pena and not those of TMM, as evidenced by the cross-examination testimony of Joe Pena and Delgado's own testimony. However, in light of the substantial evidence to the contrary, *see supra* Part II A, we reject that argument.

The continuity prong is also met here. TMM's practice of continuously collecting "the dime" from TMM and non-TMM drug dealers evidenced a "specific threat of repetition extending indefinitely into the future." *Id.* at 242 (offering as an example of continuity a scenario in which an individual collects "insurance" on a monthly basis from the neighborhood's storekeepers to cover them against intentional breakage of their windows).The number and frequency of predicate acts committed by TMM evidence a threat of such activities continuing into the future. As described in Part II A of this opinion, there was substantial evidence, including eye-witness testimony, indicating that Delgado participated in six of the seven predicate acts alleged in the indictment. We are convinced that a jury could have easily found that Delgado's participation in the enterprise was through a pattern of racketeering activity.

### III. Admission of Co-conspirators' Hearsay Statements

Delgado argues that the district court erred in admitting hearsay statements of co-conspirators under Federal Rule of Evidence 801(d). We reject this argument.

10

We review the admission of evidence under Rule 801(d)(2)(E) for abuse of discretion. *United States v. Robinson*, 367 F.3d 278, 291 (5th Cir. 2004) (quoting *United States v. Solis*, 299 F.3d 420, 443 (5th Cir. 2002)).

"[A] statement is not hearsay if . . . [t]he statement is offered against a party and is . . . a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy." Fed. R. of Evid. 801(d)(2)(E). The government must prove by preponderance of the evidence "(1) the existence of a conspiracy, (2) the statement was made by a co-conspirator of the party, (3) the statement was made during the course of the conspiracy, and (4) the statement was made in furtherance of the conspiracy." *Robinson*, 367 F.3d at 291-92 (quoting *Solis*, 299 F.3d at 443).

Delgado fails to point to any specific statement that he can claim was improperly admitted by the district court. Instead, he argues only that the evidence failed to show that he was part of the conspiracy charged in the indictment, and thus any statements made in furtherance of that conspiracy are not admissible. However, that is not a requirement of Rule 801(d)(2)(e). "The conspiracy that forms the basis for admitting the coconspirators' statements need not be the same conspiracy for which the defendant is indicted." *United States v. Arce*, 997 F.2d 1123, 1128 (5th Cir. 1993). Thus, Delgado's argument fails.

## IV. Admission of Hearsay Statements in Violation of the Sixth Amendment

Delgado next argues that the district court improperly restricted his Sixth Amendment right to confront witnesses against him by admitting the testimony of Michael Martinez, which contained hearsay statements by co-conspirators.

"Alleged violations of the Confrontation Clause are reviewed *de novo*, but are subject to a harmless error analysis." *United States v. Bell*, 367 F.3d 452, 465 (5th Cir. 2004).

11

Delgado cites *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354 (2004). Under

*Crawford*, ex parte testimonial statements, which may include affidavits, custodial examinations,

prior testimony that the defendant was unable to cross-examine, or police interrogations, *id.* at

1364, are categorically inadmissible. *Id.* at 1374.

Once again, Delgado fails to point to any specific statements he claims were improperly

admitted. A review of the record shows that the testimony of Michael Martinez to which

Delgado had a "running objection" at trial was testimony that contained hearsay statements made

during the course of and in furtherance of a conspiracy and was therefore admissible under

Federal Rule of Evidence 801. Michael Martinez testified as to statements given by fellow TMM

members regarding the sale of drugs, the collection and safekeeping of "the dime" from TMM

members, the collection of drug debts owed to TMM members, the commission of crimes to

collect debts, and the covering-up of crimes. *Crawford* is not applicable to those statements

because they are not testimonial hearsay statements. Accordingly, we find no error.

## V. Instructions Concerning Co-conspirators' Guilty Pleas

Delgado contends that the district court erred in failing to give a sufficient limiting

instruction concerning his co-conspirators' guilty pleas.

Where, as here, the defendant did not request a limiting instruction at trial, we review

challenges to the sufficiency of a limiting instruction for plain error. *See United States v. Newell*,

315 F.3d 510, 523 (5th Cir. 2002); *United States v. Martin*, 332 F.3d 827, 834 (5th Cir. 2003).

"Plain error occurs only when the instruction, considered as a whole, was so clearly erroneous as

to result in the likelihood of a grave miscarriage of justice." *Id.* (quoting *United States v.*

*Lankford*, 196 F.3d 563, 575 (5th Cir. 1999)). We find no plain error in the district court's

12

treatment of the co-conspirators' guilty pleas.

Defendants are entitled to have questions of guilt based on the evidence against them, "not on whether a government witness or a codefendant has plead guilty to the same charge." *United States v. Black*, 685 F.2d 132, 135 (5th Cir. 1982) (quoting *United States v. Fleetwood,* 528 F.2d 528, 532 (5th Cir. 1976)).  However, "under some circumstances the government might have a legitimate evidentiary reason for bringing out testimony relating to its witnesses' prior convictions, even when those convictions are for charges similar or identical to those upon which the defendant is being charged." *Id.* (quoting *Fleetwood*, 528 F.2d at 532).  When evaluating the impact of a witness's guilty plea, we consider four factors:  "1) the presence or absence of a limiting instruction; 2) whether there was a proper evidentiary purpose for introduction of the guilty plea; 3) whether the plea was improperly emphasized or used as substantive evidence of guilt; and 4) whether the introduction of the plea was invited by defense counsel." *United States v. Murray*, 988 F.2d 518, 523 (5th Cir. 1993).

Here, those factors weigh strongly in favor of a finding of no error.  First, contrary to Delgado's assertion that the district court failed to give any instructions limiting the jury's consideration of the co-conspirators' guilty pleas, the court did give such an instruction.   The district court specifically instructed the jury that the evidence was offered as potential impeachment evidence of the witnesses, and for no other purpose. *Compare United States v. Harrell*, 436 F.2d 606 (5th Cir. 1970) (finding plain error where district court did not give limiting instruction regarding co-conspirator's guilty plea).  Second, the government offered evidence of Delgado's co-conspirators' guilty pleas for a legitimate purpose. Rather than allow the defense to impeach the witnesses' credibility on cross-examination by questioning those

13

witnesses as to their guilty pleas and plea agreements, the prosecution elicited such information during direct examination to avoid the appearance of an intent to conceal. *See United States v. Veltre*, 591 F.2d 347, 349 (5th Cir. 1979) ("Where, as here, the codefendant is a witness at trial, subject to the rigors of cross-examination, disclosure of the guilty plea to blunt the impact of attacks on her credibility serves a legitimate purpose and is permissible.") Third, the pleas were not improperly emphasized by the prosecution. Rather, the government briefly asked each witness whether he had pled guilty in this case, whether that plea was pursuant to an agreement, and what the terms of the plea agreement were, sometimes admitting the plea agreement into evidence. The emphasis was not on the witness's admission of guilt, but on the witness's self-serving reasons for testifying. Finally, while Delgado did not invite introduction of the co-conspirators' guilty pleas, he took full advantage of that evidence in referring to it during cross-examination of a key government witness and during closing argument to impeach the witnesses' credibility.

## VI.  Admission of Delgado's Prior Conviction

During the course of Delgado's trial, counsel for Delgado informed the district court that Delgado wished to testify.  The government stated its intention to impeach Delgado's credibility by asking him whether he had any prior felony convictions.  Over defense counsel's objections, the district court concluded that Federal Rule of Evidence 609(e) clearly allowed the introduction of such evidence.  During direct examination, defense counsel preemptively asked Delgado about his prior convictions. Delgado disclosed the existence of his prior murder conviction, voluntarily including the fact that the conviction was for the murder of Chris Vasquez, one of the predicate acts alleged in the indictment.  The next day, to curtail any prejudicial effect of the defendant's voluntary admission that the prior felony was a conviction for one of the very acts charged in the

14

indictment, the district court instructed the jury to disregard the conviction for any purpose. Delgado now challenges the district court's admission of his prior murder conviction. We conclude that Delgado waived his objection to that ruling by introducing the prior conviction during direct examination.

In *Ohler v. United States*, the Supreme Court addressed the consequences of preemptively admitting a prior conviction during direct examination. 529 U.S. 754 (2000). There, after the district court ruled that the government could ask the defendant about her prior felony convictions, the defendant admitted on direct examination that she had previously been convicted of possessing methamphetamine. *Id.* at 755. On appeal, Ohler challenged the district court's ruling allowing the government to use her prior conviction for impeachment purposes. *Id.* The Supreme Court held "that a defendant who preemptively introduces evidence of a prior conviction on direct examination may not on appeal claim that the admission of such evidence was error." *Id.* at 760.

Here, as in *Ohler*, the defendant offered testimony of his prior conviction before being asked about it on cross-examination. By introducing the evidence in the first instance, even if done to "remove the sting" of the conviction, Delgado has waived his appeal as to this matter. Accordingly, we need not consider whether the district court's admission of the evidence was erroneous.

## CONCLUSION

For the foregoing reasons, Delgado's conviction is AFFIRMED.

15