**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

No. 98-40956

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DORIS JEAN WHITE;
JESUS VISOSO RAMIREZ, also known as Gordo;
ANTHONY WAYNE CRINER,

Defendants-Appellants.

---

Appeals from the United States District Court
For the Southern District of Texas

July 17, 2000

Before POLITZ, SMITH and DENNIS, Circuit Judges.

DENNIS, Circuit Judge:

This direct criminal appeal arises from the conviction following jury trial of Appellants Doris Jean White, Anthony Wayne Criner and Jesus Visoso Ramirez for conspiracy to distribute and possession with intent to distribute cocaine in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846. For the reasons assigned, we affirm the convictions and sentences of

1

Appellant White; affirm the convictions and sentences of Appellant Visoso; affirm the convictions and sentences of Appellant Criner on two counts; and reverse the conviction and sentence of Appellant Criner on one count and remand his case to the district court for further proceedings consistent with this opinion.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

This case involves allegations of conspiracy and cocaine distribution.  On November 20, 1996, Eduardo Cisneros (Cisneros) and Sandra Vargas (Vargas) were pulled over by an Oklahoma trooper for driving a Ford LTD with a defective license tag light.  The trooper received permission to search the vehicle and discovered a false compartment behind a side vent.  A canine search revealed 14 kilograms of cocaine hidden in the interior panels of the LTD.  After his arrest, Cisneros agreed to cooperate with authorities by performing a controlled delivery of the narcotics to a man he identified as "Gordo" in Wichita, Kansas.

Prior to the controlled delivery, officers replaced all but 10 grams of the cocaine with sugar, rewrapped the packages and stored them in the interior panels of the LTD.  For surveillance purposes, the exchange location was changed from the Wichita Inn to the Days Inn, located across the street.  Cisneros drove to Wichita on November 21 and parked the LTD in front of the Wichita Inn, the original exchange location.  He wrote a note in Spanish indicating that he was in Room 116 of the Days Inn and placed it under the

2

windshield wiper of the LTD.

Jesus Visoso Ramirez (Visoso), also known as Gordo, had flown to Wichita from Albuquerque, New Mexico at 2:30 pm that afternoon where he was met at the airport by Doris Jean White (White) and Anthony Wayne Criner (Criner) who accompanied him to the Wichita Inn. Officers observed the three appellants drive from the airport to the Wichita Inn, where Visoso read the note before proceeding to Room 116 of the Days Inn. Vargas greeted Visoso at the door and Cisneros handed him the keys to the LTD following a brief conversation which was recorded by a body microphone worn by Cisneros.

When Visoso returned to the car, White drove to the Wichita Inn parking lot where the LTD was located. Criner exited White's vehicle, entered the LTD and drove out of the parking lot behind White before passing her several blocks from the motel. Kansas authorities stopped the LTD shortly after it passed White's vehicle because they did not want to lose the vehicle. When Criner was stopped, he produced a driver's license but had no proof of insurance for the LTD. He was nervous, according to authorities at the scene.

White and Visoso drove past the LTD and proceeded a few blocks before turning around, when they were stopped by authorities. The officers stated that White's hands were visibly shaking as she reached over to retrieve identification from the glove compartment. She exited the vehicle and officers reported a strong odor of

3

marijuana on her clothing. Officers received permission to search White, when they found $2,500 in her jacket pocket. An authorized search of Visoso at the scene uncovered an airline ticket noting that his return flight to Albuquerque departed at 6:46 pm. On the outside of the ticket jacket, someone had written the phone number to the Days Inn and the number 116.

Visoso was indicted by a Kansas grand jury for conspiracy to distribute and possession with intent to distribute cocaine in December 1996. The government requested dismissal of this indictment, which was granted in February 1997. The government filed a second indictment against Visoso and Cisneros in July 1997 in Texas. In December 1997, the government filed a superseding indictment against appellants in this case as well as several other persons. The government alleged that Visoso, Cisneros, White and Criner conspired to possess with intent to distribute more than five kilograms of cocaine between February 1 and November 26, 1996 (count one); Visoso, Cisneros and Criner aided and abetted possession with intent to distribute 14.6 kilograms of cocaine between July 14 and 28, 1996 (count two); Visoso and Cisneros aided and abetted possession with intent to distribute 14.6 kilograms of cocaine between October 2 and 7, 1996 (count three); and Visoso, Cisneros, White and Criner aided and abetted possession with intent to distribute 14.6 kilograms of cocaine between November 17 and 21, 1996 (count four).

As part of a plea agreement, Cisneros pleaded guilty to the

4

conspiracy charged in the original indictment and faced a minimum sentence of 151 months. The case involving Visoso, White and Criner was tried before a jury. Cisneros served as the government's primary witness and Visoso, White and Criner testified on their own behalf. At the conclusion of the trial, the jury convicted Visoso, White and Criner of all charges in the superseding indictment.

Visoso was sentenced to four concurrent 188 month terms of imprisonment followed by five years of supervised release. He was also assessed a $10,000 fine. White was sentenced to two concurrent 136 month terms of imprisonment followed by five years of supervised release. The district court initially granted Criner's motion for judgment of acquittal on count two but reversed itself and reimposed sentence on this count. Criner was sentenced to three concurrent 120 month terms of imprisonment followed by five years of supervised release. Visoso, White and Criner timely appealed their convictions and sentences.

## II.  DISCUSSION

A.  Sufficiency of the Evidence

Visoso, White and Criner contend that there was insufficient evidence to support their convictions of conspiracy and possession with intent to distribute cocaine. In considering whether there was sufficient evidence, the evidence is reviewed "to determine whether a rational trier of fact, after considering all the

5

evidence and reasonable inferences drawn therefrom in a light most favorable to the verdict, could have found the defendant guilty beyond a reasonable doubt." United States v. Cornett, 195 F.3d 776, 781-82 (5th Cir. 1999) (citing United States v. Walker, 148 F.3d 518, 523 (1998)). Under this standard, it cannot be said that the evidence was insufficient to support the convictions of Visoso and White. Two of Criner's three convictions are also supported by the evidence.

To prove a conspiracy to possess and distribute a controlled substance, the government must prove beyond a reasonable doubt 1) the existence of an agreement between two or more persons to violate narcotics laws, 2) knowledge of the conspiracy and intent to join it and 3) voluntary participation in the conspiracy. See United States v. Quiroz-Hernandez, 48 F.3d 858, 866 (5th Cir. 1995). The factors that may be considered in determining whether a defendant is guilty of committing a drug conspiracy crime are "concert of action", presence among or association with drug conspirators, and "evasive and erratic behavior." See United States v. Bermea, 30 F.3d 1539, 1552 (5th Cir. 1994), cert. denied, 513 U.S. 1156 (1995). The jury may infer a conspiracy agreement from circumstantial evidence. See Quiroz-Hernandez, 48 F.3d at 866. However, mere presence or association cannot establish that a person has voluntarily joined a conspiracy. See Bermea, 30 F.3d at 1552.

There was sufficient evidence of Visoso's agreement, knowledge

6

and voluntary participation in the conspiracy to support his convictions. First, the testimony of Cisneros, the government's primary witness, indicated that Visoso had an integral role in the conspiracy. Cisneros stated that he met Visoso in 1994 when he joined an enterprise that transported narcotics from Mexico to Kansas. According to Cisneros, he drove several 14 kilogram loads of cocaine to Kansas in 1996, beginning with a load of cocaine that he delivered to Visoso at the Wichita Inn in July 1996. Cisneros testified that after delivering a second load of cocaine to Visoso in Wichita, Visoso asked him to transport $104,000 from New Mexico to Texas. Cisneros stated that he drove to New Mexico where he retrieved the cash and placed it in the secret compartment used to hide narcotics. He was stopped by Border Patrol agents in New Mexico where a canine alerted to the presence of narcotics. Authorities seized $105,620 in cash and a sheet of paper containing Visoso's name and New Mexico phone number.[1] Cisneros was released following this incident. He testified that he transported cocaine to Wichita two more times before his arrest on November 20, 1996.

Second, the government introduced evidence which confirmed Cisneros's testimony tying Visoso to the conspiracy. This evidence included Wichita motel receipts from July 1996 and October 1996 with Cisneros's handwriting that corresponded to the dates he said

[1]The New Mexico phone number was billed to Naomi Perea. According to the phone company's records, Visoso was listed as Perea's roommate/boyfriend and was authorized to make charges on this line.

7

he delivered narcotics to Visoso in Wichita; a photo of the $105,620 retrieved when Cisneros was stopped in July 1996 and the sheet of paper containing Visoso's name and phone number that was found with the money; Visoso's plane ticket from Albuquerque to Wichita with the phone number of the Days Inn and the number 116 written on it; and a business card containing White's name and Cisneros's phone number found in Visoso's possession when he was arrested in November 1996.

The government also introduced records of telephone calls between Visoso's New Mexico phone number, White's Kansas phone number and a phone at the Greenville penitentiary. From September 19 to December 5, 1996, there were 16 phone calls from Visoso's phone number to White's phone number; 11 collect phone calls from White's phone number to Visoso's phone number; and 35 collect phone calls from Greenville to Visoso's phone number. From October 19, 1996 to January 6, 1997, there were 24 collect phone calls from Greenville to White's phone number. According to Visoso, the purpose of these phone calls was to discuss obtaining an attorney for Jesus Avila's appeal. Avila was White's former boyfriend who was incarcerated at the Greenville penitentiary.

Third, Visoso gave conflicting versions of the events leading to his arrest. Following his arrest, Visoso told officers that he met White at a Wichita service station when he was driving through the city en route to visit relatives. He said he was in Wichita to purchase a used car from White's father. When he testified at

trial, Visoso stated that he met White through Avila. For the first time, Visoso said he had given White money on several occasions for Avila's appeal, including $2,500 in White's jacket. In addition, Visoso testified that he had never met Cisneros. However, he was unable to explain why he had a business card with Cisneros's phone number when he was arrested in November 1996 or why Cisneros had a sheet listing his name and phone number in July 1996 when Cisneros was arrested with more than $100,000 in cash.

The evidence presented by the government, coupled with Visoso's actions on the dates in question and the inconsistencies in his story, constituted a sufficient basis from which a reasonable juror could find beyond a reasonable doubt that the government established Visoso's guilt of the essential elements of the crimes charged. Visoso flew to Wichita and was transported to the motel where Cisneros was waiting as part of a prearranged delivery of 14 kilograms of cocaine. Authorities observed Visoso receive the keys to the vehicle containing cocaine from Cisneros. When Visoso was searched by authorities, they discovered a plane ticket that had the name and phone number of Cisneros's hotel and his room number written on it, as well as a business card with White's name and Cisneros's phone number. There were an unusual number of phone calls between Visoso, White and the Greenville penitentiary. In addition, Visoso first claimed that he met White by happenstance at a service station and later stated that he was introduced to her by her former boyfriend. Thus, Visoso's

9

convictions were supported by sufficient evidence.

White's convictions were also supported by sufficient evidence. White met Visoso at the airport and provided transportation to the motels where Cisneros and the LTD were located. After her vehicle was stopped, White initially told authorities that she met Visoso through John Lopez, a former boyfriend who was incarcerated in Greenville. She stated that Visoso wanted to purchase a used vehicle from her father who operated an automobile repair business. She also said that Criner requested a ride to the Days Inn.

During the trial, White testified that Visoso had given her a total of $9,000 on three or four occasions for Avila's appeal. She was unable to explain why she originally identified Avila as John Lopez. Although she was allegedly helping Avila locate an appellate attorney, White could not state the reason for his incarceration. She testified that she asked Criner to accompany her to the airport to meet Visoso because she did not know him, despite earlier testimony that Visoso had given her money on several occasions. During cross-examination, White explained that Visoso's wife mailed the money to her.

White testified that Visoso directed her to drive to the Days Inn. When she was arrested in November 1996, however, White told authorities that she was at the Days Inn because Criner requested a ride to the motel. When questioned about the numerous phone calls, White explained that she called Visoso after he failed to

10

purchase a vehicle from her father. Finally, although White stated that Visoso was in Wichita to purchase a used car from her father, she took him to a motel to retrieve the car instead of to her father's automobile shop. This evidence was sufficient for White's convictions.

Criner argues that there is insufficient evidence to convict him of conspiracy because the government failed to prove he had knowledge of the conspiracy or voluntarily participated in the conspiracy. When Criner was stopped behind the wheel of the vehicle containing the cocaine, he produced a driver's license but had no proof of insurance for the LTD. He was nervous, according to authorities at the scene. He told the authorities that White was a longtime friend who picked him up earlier that afternoon and asked him to drive a car to an unspecified garage in Wichita. Criner stated that he did not know the name or location of the garage where he was taking the LTD to be repaired, even though he was driving in front of White's vehicle.

The government asserts that Criner's participation in the conspiracy can be inferred from the circumstances. See United States v. Garcia, 917 F.2d 1370, 1376 (5th Cir. 1990). While an individual's mere presence around a drug deal does not make that individual a member of the conspiracy, "a jury may find knowledgeable, voluntary participation from presence when the presence is such that it would be unreasonable for anyone other than a knowledgeable participant to be present." United States v.

11

<u>Gallardo-Trapero</u>, 185 F.3d 307, 322 (5th Cir. 1999), <u>cert. denied</u>, 120 S. Ct. 961 (2000) (internal citations and quotations omitted).

Criner had physical possession of the vehicle containing cocaine when it was stopped by authorities. He had no proof of insurance for the LTD. Criner said he did not know the name or location of the garage where he was taking the LTD to be repaired, even though he was driving in front of White's vehicle when he was stopped. The fact that he passed White's vehicle belies his claim that he was unaware of the final destination. Cisneros testified that Visoso identified the purchaser of the cocaine as "El Negro", or the black man, and Criner was the only black male present. Finally, it is unlikely that Criner would have been permitted to drive the vehicle containing 14 kilograms of cocaine if he were not part of the conspiracy. <u>See</u> <u>United States v. Valdiosera-Godinez</u>, 932 F.2d 1093, 1096 (5th Cir. 1991) ("Had [defendant] not been privy to this agreement and part of it, the other two men certainly would not have allowed him to stick around . . . In this case, [defendant's] presence and association are coupled with a total absence of rational, non-inculpatory explanations of the facts."), <u>cert. denied</u>, 508 U.S. 921 (1993).

While the evidence presents a close case against Criner, taking it and all reasonable inferences in the light most favorable to the verdict, a rational trier of fact could have found Criner guilty of conspiracy beyond a reasonable doubt. Accordingly, we conclude that there was sufficient evidence to support Criner's

12

convictions for counts one and three, involving offenses in October 1996 and November 1996. On the other hand, the government acknowledged during oral argument that there was insufficient evidence to convict Criner of count two, possession with intent to distribute in July 1996. Given this concession, we reverse Criner's conviction and sentence for count two.

Visoso, White and Criner contend that Cisneros's testimony was not credible given his previous convictions and numerous aliases[2], and that without this testimony the evidence was insufficient to sustain their convictions. Appellants also note that Cisneros admitted lying to authorities during his cross examination. For example, he admitted lying to an officer when he stated that he was transporting cocaine to prevent individuals from hurting his child and to allow his wife to receive credit on money owed in Mexico.

This court has repeatedly stated that the jury is the final arbiter of the credibility of witnesses. See Bermea, 30 F.3d at 1552. "We have held that a guilty verdict may be sustained if supported only by the uncorroborated testimony of a coconspirator, even if the witness is interested due to a plea bargain or promise of leniency, unless the testimony is incredible or insubstantial on its face." Id. Testimony is incredible as a matter of law only if it relates to facts the witness could not have observed or to

---

[2]Cisneros had at least nine aliases. At the time of his testimony, he had three federal convictions and two state convictions, and a state probated sentence had been revoked.

13

events which could not have occurred under the laws of nature. <u>See</u> <u>id.</u> Cisneros's testimony was not incredible as a matter of law. The government introduced evidence that Cisneros checked into Wichita hotels during the time periods he said he traveled there to deliver cocaine to Visoso. When Cisneros was stopped in July 1996, he had more than $100,000 in cash and Visoso's telephone number. Cisneros was arrested in November 1996 after authorities discovered 14 kilograms of cocaine hidden in the vehicle he was driving. Given the evidence corroborating Cisneros's testimony, it was not incredible as a matter of law.

B.   Admissibility of the Audiotape

A district court's evidentiary rulings are reviewed for abuse of discretion. <u>See</u> <u>United States v. Narviz-Guerra</u>, 148 F.3d 530, 536 (5th Cir.), <u>cert. denied</u>, 525 U.S. 1046 (1998). The determination of trustworthiness of a tape recording is left to the sound discretion of the trial judge. <u>See</u> <u>United States v. Dukes</u>, 139 F.3d 469, 473 (5th Cir.), <u>cert. denied</u>, 525 U.S. 894 (1998). "[P]oor quality and partial unintelligibility do not render tapes inadmissible unless the unintelligible portions are so substantial as to render the recording as a whole untrustworthy." <u>Id.</u> (citing <u>United States v. Stone</u>, 960 F.2d 426, 436 (5th Cir. 1992)).

Visoso argues that the audiotape of his conversation with Cisneros was completely unintelligible and should not have been admitted. The conversation was in Spanish but the government had the tape transcribed and translated into English for the jury.

14

Visoso also submitted a transcription of the tape in English. An FBI agent compared the audiotape with the government transcription and the Visoso transcription. The FBI agent stated that approximately half of the audiotape was unintelligible but that the gist of the conversation was reliable. He noted that the government transcription accurately portrayed the unintelligible portions of the audiotape, as opposed to Visoso's transcription which was incomplete and inaccurate. Based upon the these statements, the district court ruled that the government transcription was reliable and the unintelligible portions of the audiotape were not so substantial that the recording as a whole was untrustworthy.

The FBI agent testified to the jury concerning the accuracy and reliability of the government transcription of the audiotape. He was also cross examined by Visoso. The district court submitted the audiotape and the government transcription to the jury, directing them to use the translation as the official version and to determine how much weight to place on the audiotape in their deliberations. Given the testimony of the FBI agent and the cautionary instructions by the district court, the district court did not abuse its discretion in admitting the government transcription of the audiotape to the jury.

C.   Speedy Trial Act

In the final argument on appeal, Visoso contends that the government failed to proceed to trial within the time limits set

15

forth in the Speedy Trial Act, 18 U.S.C. § 3161 *et seq.* We review the district court's interpretation of the Speedy Trial Act de novo and its findings of fact concerning the Act for clear error. See United States v. Garrett, 45 F.3d 1135, 1137 (5th Cir.), cert. denied, 514 U.S. 1134 (1995). Under the Speedy Trial Act, a defendant who has not pled guilty must be tried within 70 days of filing an indictment or the date on which the defendant first appears before a judicial officer, whichever is later. See 18 U.S.C. § 3161(c)(1). Despite this 70 day requirement, the Act provides for the exclusion of certain periods of time from this calculation, including:

> (F) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion;

> (G) delay resulting from any proceeding relating to the transfer of a case or the removal of any defendant from another district under the Federal Rules of Criminal Procedure;

> (H) delay resulting from transportation of any defendant from another district . . except that any time consumed in excess of ten days from the date an order of removal or an order directing such transportation, and the defendant's arrival at the destination shall be presumed to be unreasonable . . . .

18 U.S.C. § 3161 (h)(1)(F)-(H).

According to Visoso, there were 100 non-excludable days between his indictment and the trial, 30 days more than the statutory limit. The district court calculated 54 non-excludable days between Visoso's indictment and trial. After reviewing the

16

relevant dates and the statutorily permitted exclusions, we reject Visoso's calculation of 100 non-excludable days. The district court correctly calculated the number of non-excludable days, with one exception: the district court failed to include eight non-excludable days between October 6, 1997 and October 13, 1997. When eight non-excludable days are added to the 54 non-excludable days calculated by the district court, there were 62 non-excludable days. Thus, fewer than 70 non-excludable days elapsed and the government complied with the terms of the Speedy Trial Act.

### III. CONCLUSION

For the reasons assigned, we REVERSE and REMAND Criner's conviction and sentence on count two. Otherwise, we AFFIRM Criner's convictions and sentences on the remaining counts and we AFFIRM the convictions and sentences of Visoso and White.

17