**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

**No. 00-40080**

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**EDUARDO ARRIAGA-GARCIA; JOSE ARRIAGA-GARCIA,**

**Defendants-Appellants.**

**Appeal from the United States District Court**
**for the Southern District of Texas**
**(L-99-CR-494-2)**

June 4, 2001

Before GARWOOD, HALL,[1] and BARKSDALE, Circuit Judges.

PER CURIAM:[2]

Eduardo and Jose Arriaga-Garcia appeal their drug-related convictions, maintaining the district court abused its discretion by denying their motions for a mistrial because of the Government's alleged suppression of evidence. Eduardo Arriaga-Garcia also claims: the evidence was insufficient to sustain his convictions; and the district court erred in denying his motions for judgment of acquittal or a new trial. **AFFIRMED.**

---

[1]Circuit Judge of the Ninth Circuit, sitting by designation.

[2]Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should *not* be published and is *not* precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I.

In September 1999, a jury found Eduardo Arriaga-Garcia guilty of:  conspiracy to possess with intent to distribute marijuana in excess of 1,000 kilograms (2,200 pounds) (count 1); and possession with intent to distribute a quantity in excess of 1,436 pounds of marijuana on 5 November 1998 (count 2).  The same jury found Jose Arriaga-Garcia guilty of:  conspiracy to possess with intent to distribute marijuana in excess of 1,000 kilograms (count 1); possession with intent to distribute approximately 1,495 pounds of marijuana on 1 June 1999 (count 3); and possession with intent to distribute approximately 297 pounds of marijuana on 9 May 1999 (count 4).

## II.

Eduardo Arriaga-Garcia's sufficiency claims are addressed first; then, both Appellants' suppression claim.

## A.

Appellants moved for judgment of acquittal at the conclusion of the Government's case, reurged their motions at the conclusion of all the evidence, and, following the verdict, moved for judgment of acquittal and, in the alternative, for a new trial.  *See* FED. R. CRIM. P. 29(a) (motion for judgment of acquittal before submission to jury); FED. R. CRIM. P. 29(c) (motion for judgment of acquittal after discharge of jury).  Each motion was denied.  Based upon Eduardo Arriaga-Garcia's challenges to the sufficiency of the

2

evidence as to both counts on which he was convicted, he contests the denial of his motions for judgment of acquittal and for a new trial.

Eduardo Arriaga-Garcia was employed as a truck driver for Advanced Distribution Systems (A.D.S.). On 5 November 1998, the A.D.S. terminal manager contacted Eduardo Arriaga-Garcia to haul a load for Proausa from Laredo, Texas, to Cable-Com in East Chicago, Indiana. Both companies were fictitious.

Eduardo Arriaga-Garcia picked up the load at a warehouse rented under the name of Proausa. Later that day, United States Border Patrol Agents arrested Eduardo Arriaga-Garcia 15 miles north of Laredo because the tractor-trailer he drove carried 653.17 kilograms (1,440.25 pounds) gross weight of marijuana hidden inside the hollow centers of five wooden spools. The spools had been covered by tarp, concealing the marijuana.

The initial criminal complaint against Eduardo Arriaga-Garcia was dismissed; however, in June 1999, Eduardo Arriaga-Garcia was reindicted after confidential informant Zambrano provided information that Eduardo Arriaga-Garcia had helped pack and load the marijuana. At trial in September 1999, Eduardo Arriaga-Garcia testified he did *not* know the load contained marijuana.

Zambrano became a confidential source after the Illinois Police Force stopped him on 5 May 1999. On that occasion, the

pick-up truck he drove contained $123,000 hidden below its bed. Zambrano was recruited to assist DEA Special Agent Peterson.

Zambrano was one of the Government's main witnesses at the Arriaga-Garcia trial; his credibility was very much at issue. In addition to admitting to being stopped in Illinois carrying $123,000, Zambrano testified to the following. He had a pending arrest in Zapata County, where he had been found in possession of 591.25 pounds of marijuana. In 1996, he had spent 11 months in a Mexican jail, but was released after he was acquitted of the charges. He had also been stopped in February 1998 in the Rio Grande Valley, and his vehicle had been seized because it had been used to transport marijuana. Zambrano used his birth name in Mexico and another name in the United States. The only consideration he received in exchange for his cooperation was that he was *not* charged in the Arriaga-Garcia conspiracy.

Zambrano testified that, on 31 October 1998, Eduardo Arriaga-Garcia assisted him in transporting marijuana from Zambrano's home to the Proausa warehouse. On that and the next two days, Zambrano, Appellants Eduardo and Jose Arriaga-Garcia, and two others had packaged the marijuana in the wooden spools, using grease and rug deodorant to impede the smell and covering the marijuana in transparent plastic. (In mid-January 1999, when DEA Agents searched the warehouse pursuant to the owner's consent, they found disassembled wooden spools, similar to the ones Eduardo Arriaga-

4

Garcia hauled the previous November, as well as pieces of black duct tape wrapped around the spools and pieces of clear cellophane wrapping paper.)

On 5 November 1998, Zambrano loaded the spools onto the flatbed of Eduardo Arriaga-Garcia's truck with a forklift. Jose Arriaga-Garcia had notified him that Eduardo Arriaga-Garcia would pick up the spools, and Eduardo Arriaga-Garcia helped him chain the spools down.

After being provided information by Zambrano, the DEA conducted surveillance from 9 through 31 May 1999. The surveillance included Jose Arriaga-Garcia's residence at 208 Idaho Street and a house he rented at 321 South Dakota Street. Beginning 11 May, Jose Arriaga-Garcia rented the 321 South Dakota home under the alias Jose Salazar, purportedly on behalf of Rodrigo Salazar. On that same day, Eduardo Arriaga-Garcia was observed twice at the realtor's, once with Jose Arriaga-Garcia.

On 31 May 1999, Zambrano drove a pick-up truck loaded with marijuana to the house at 321 South Dakota. Jose Arriaga-Garcia and two others joined him in unloading and weighing the marijuana and then stacking it in a closet. When arrested later that day, Jose Arriaga-Garcia had a receipt showing the total weight to be between 1,400 and 1,500 pounds. Early on 1 June 1999, DEA Agents executed search warrants at the two houses. At 321 South Dakota, they seized over 100 bundles of marijuana with a gross weight of

5

676.32 kilograms (1,495 pounds). At 208 Idaho, they seized torn pieces of paper with handwritten drawings of wooden spools similar to the spools on the 5 November 1998 load driven by Eduardo Arriaga-Garcia; documents regarding rental of the warehouse Proausa had used; a bill of lading matching the load driven by Eduardo Arriaga-Garcia on 5 November; several receipts for payment of rent; a receipt dated 30 October 1998 from Builder's Square for packing material, such as tape and staples; receipts from Gutierrez Mini-Storage; and a receipt for a forklift rental, dated 4 November 1998.

The next day the Agents executed a search warrant on a pick-up truck Jose Arriaga-Garcia and his alleged co-conspirators had used. It was parked at Gutierrez Mini-Storage. The Agents recovered approximately 135.46 kilograms (300 pounds) of marijuana, hidden in a compartment in the bed of the truck.

1.

Eduardo Arriaga-Garcia asserts the evidence was insufficient because the Government presented *no credible* testimony or evidence upon which the jury could find him guilty. He contends that the Government's main witness, Zambrano, was tainted by his admitted drug trafficking and was impeached by prior arrests. He also highlights: Zambrano's testimony that, to his knowledge, Eduardo Arriaga-Garcia was *not* involved in the May 1999 transaction; and Agent Peterson's agreement with Zambrano's statement.

Because Eduardo Arriaga-Garcia moved for judgment of acquittal, "we review the evidence in the light most favorable to the verdict, to determine whether any reasonable trier of fact could have found that the evidence established guilt beyond a reasonable doubt". *United States v. Edwards*, 231 F.3d 933, 935 (5th Cir. 2000).

a.

The evidence was sufficient to support the conviction for intent to distribute 1,436 pounds of marijuana on 5 November 1998. Testimony was given that Eduardo Arriaga-Garcia knowingly possessed the marijuana by wrapping, packing, and securing it to the flatbed; and the jury could infer, from the quantity of marijuana involved (over 1,400 pounds), his intent to distribute it. *See United States v. Cartwright*, 6 F.3d 294, 299 (5th Cir. 1993) (possession with intent to distribute requires proof of (1) possession of illegal substance, (2) knowledge, and (3) requisite intent to distribute), *cert. denied*, 513 U.S. 1060 (1994); *United States v. Romero-Reyna*, 867 F.2d 834, 836 (5th Cir. 1989) (generally may infer intent to distribute controlled substance solely from possession of large amount), *cert. denied*, 494 U.S. 1084 (1990).

Eduardo Arriaga-Garcia's no-credible-testimony-assertion fails. First, "non-credibility is generally *not* a sound basis for alleging insufficiency of the evidence on appeal; it is the jury's function to determine credibility". *United States v. Polk*, 56 F.3d

613, 620 (5th Cir. 1995) (emphasis added). Second, Zambrano's testimony was fully corroborated by the evidence obtained through the consent search of the warehouse, the documents seized at Jose Arriaga-Garcia's residence and the rented house, and the details to which other witnesses testified. *Cf.* **United States v. Bermea**, 30 F.3d 1539, 1552 (5th Cir. 1994) ("[A] guilty verdict may be sustained if supported only by the uncorroborated testimony of a coconspirator, even if the witness is interested due to a plea bargain or promise of leniency, unless the testimony is incredible or insubstantial on its face."), *cert. denied*, 514 U.S. 1097 (1995).

### b.

As for the conspiracy count, Eduardo Arriaga-Garcia does *not* specify which element was *not* proven at trial. A rational jury could have found, beyond a reasonable doubt, the existence of an agreement between Eduardo Arriaga-Garcia, Jose Arriaga-Garcia, Zambrano, and other alleged co-conspirators to violate the narcotics laws; Eduardo Arriaga-Garcia's knowledge of the conspiracy and intent to join it; and his voluntary participation in the conspiracy. *See* **United States v. White**, 219 F.3d 442, 445 (5th Cir. 2000). The jury could have inferred that Eduardo Arriaga-Garcia assisted his brother Jose Arriaga-Garcia in renting the house, because he was seen twice at the realtor's. Furthermore, the evidence was sufficient to support a finding that

8

Jose Arriaga-Garcia possessed and distributed 1,495 pounds of marijuana on 1 June 1999. Regardless of whether Eduardo Arriaga-Garcia personally participated in that specific transaction, he was liable for crimes committed by his co-conspirators in furtherance of the conspiracy. *See United States v. Payne*, 99 F.3d 1273, 1278 (5th Cir. 1996).

Aggregating the 1,436 pounds of marijuana seized in November 1998 with the 1,495 pounds seized in June 1999 yields a total of 2,931 pounds. Therefore, viewing the evidence in the light most favorable to the verdict, the jury could have found, beyond a reasonable doubt, that Eduardo Arriaga-Garcia was guilty of conspiracy to possess with intent to distribute over 2,200 pounds (1,000 kilograms) of marijuana, as the indictment charged.

2.

In addition to Eduardo Arriaga-Garcia's post-verdict motion for judgment of acquittal, he moved, in the alternative, for a new trial. As noted, the sole basis for the motions was insufficiency of the evidence. We review the denial of a motion for a new trial for an abuse of discretion. *E.g.*, *United States v. Pankhurst*, 118 F.3d 345, 353 (5th Cir.), *cert. denied*, 522 U.S. 1030 (1997).

In the light of our previous conclusions about the sufficiency of the evidence, we likewise find *no* error in the denial of the new trial motion.

9

Both Jose and Eduardo Arriaga-Garcia assert the district court erred in denying their motions for a mistrial on the basis of the Government's failure to produce the DEA confidential source report detailing Zambrano's arrest by Illinois State Police with not only $123,000, *but also* 4.4 pounds of marijuana, in his possession. They maintain the failure to produce this report deprived them of their right to cross-examine Zambrano regarding that drug possession and of their right to a fair trial. They also maintain that, because of the Government's claimed negligence or bad faith in *not* producing the material, a new trial is warranted. The denial of a mistrial motion is reviewed only for abuse of discretion. **United States v. Wyly**, 193 F.3d 289, 298 (5th Cir. 1999); *see* FED. R. CRIM. P. 52(a) ("Any error, defect, irregularity or variance which does *not* affect substantial rights shall be disregarded." (emphasis added)).

During cross-examination of DEA Agent Peterson, Eduardo Arriaga-Garcia's counsel inquired about various reports the Agent had written about the case. The United States Attorney advised the court that various reports had *not* been provided because they dealt with ongoing investigations that resulted from information Zambrano provided. Eduardo Arriaga-Garcia's counsel requested that any reports *not* given him be submitted to the court.

When questioned about why Zambrano's criminal history was *not* in his reports, Agent Peterson explained that Zambrano's criminal history was detailed in his personnel file, which, for purposes of the informant's personal safety, was a confidential file separate from the files of ongoing investigations. Following additional discussion, the court requested that the documents be provided to it *in camera* by the end of the day.

Later that afternoon, the parties rested. They then presented closing arguments.

The DEA reports the Government submitted to the court *in camera* revealed that, when Zambrano was stopped in Illinois, not only $123,000, but also 4.4 pounds of marijuana, were found in the bed of the pick-up truck. The next morning (the day after closing arguments), the court and counsel met to discuss motions prior to submission of the case to the jury. (The court pointed out, "in fairness to the Government", that "inquiry was made by counsel for the Government as to what was told Agent Peterson by the Illinois law enforcement officer. An objection was made by defense counsel that that was hearsay, and [the court] sustained the objection".) Eduardo and Jose Arriaga-Garcia moved for a mistrial on the grounds that the Government had suppressed evidence, the defense was unable to cross-examine Zambrano, and the information was material and relevant to Zambrano's character for truthfulness. (Counsel for the defendants did *not* move to reopen the evidence, nor had they

11

requested a continuance until the court conducted its *in camera* inspection of the reports.) The Government responded that it had only a duty to disclose prior convictions, and the defense knew of the pending case in Zapata County and the case in Mexico. The Government added it had *no* objection to instructing the jury on the matter.

Outside the presence of the jury, the court recalled Agent Peterson, who acknowledged that the report he had received from the Illinois Police Force stated that Zambrano had marijuana in his truck. When questioned by Eduardo Arriaga-Garcia's counsel, the Agent stated he could *not* recall if he had told the United States Attorney about the marijuana, although he believed the United States Attorney was aware that a report of the Illinois arrest existed. Agent Peterson stated that he did *not* provide the United States Attorney with a copy of the report. When asked why he did *not* tell the defense about the marijuana, he replied that he was never asked.

The United States Attorney again distinguished his case file from the confidential informant file kept by the DEA, saying the report was in the DEA's file. He asserted that the United States Attorney's Office could *not* review those files without a court order.

12

The court conditionally denied the mistrial motion and submitted the case to the jury. In charging the jury, the court stated:

> I wish to call to your particular attention [the following:]
>
> I think the jury is aware that the Court was to review a confidential file produced by the Government. I did review that file last night in my chambers. The Court's review of the confidential Government file on its witness, Mr. Zambrano, revealed that when he was arrested in Illinois, he was in possession of approximately 4.4 pounds of marihuana. Although this arrest was previously disclosed, the presence of marihuana was *not* previously revealed, either by the Government or by Mr. Zambrano.
>
> This is an additional fact that the jury may wish to consider in determining what weight, if any, to give Mr. Zambrano's testimony....

(Emphasis added.)

1.

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is *material* either to guilt or punishment". **Brady v. Maryland**, 373 U.S. 83, 87 (1963) (emphasis added). The **Brady** rule includes both exculpatory and impeachment evidence. **United States v. Bagley**, 473 U.S. 667, 676 (1985). Pre-trial, Eduardo Arriaga-Garcia requested material known to the Government or that might be learned from investigation officers or witnesses that was exculpatory in nature or favorable to the defendants. Pre-trial, Jose Arriaga-Garcia

13

made a **Brady** request and, among other things, asked for arrest or conviction records of any witness.

"[A] successful **Brady** doctrine claim must establish three factors: (1) the prosecution's suppression of evidence; (2) the favorable character of the suppressed evidence for the defense; (3) the materiality of the suppressed evidence". **United States v. Anderson**, 574 F.2d 1347, 1353 (5th Cir. 1978). "The evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different". **Bagley**, 473 U.S. at 682 (opinion of Blackmun, J.).

Appellants' briefs on this issue are almost identical. The claimed deprivation of the right to fully cross-examine Zambrano is best articulated, however, by Jose Arriaga-Garcia. He asserts that, had his counsel "been able to argue to the jury that the sole incriminating witness (as opposed to those testifying to circumstantial matters) was a major drug dealer caught in the act and whose only escape from a lengthy jail sentence was to incriminate [Jose Arriaga-Garcia]", it was reasonably probable the jury would *not* have convicted him. (Again, *prior* to its deliberations, the jury was given this information.) But, there is *no* reason counsel could *not* have made this argument, even in the absence of the evidence of the 4.4 pounds of marijuana.

14

Along this line, Zambrano had admitted his involvement in the conspiracy to possess with intent to distribute the nearly 3,000 pounds of marijuana. Moreover, when asked if he had ever transported marijuana, he answered "yes"; and when asked how many times, he replied, "[a] lot of times". And, the jury could have inferred that the large amount of currency hidden in the pick-up truck's false compartment was drug proceeds. Showing, while Zambrano testified, that he had possessed an additional 4.4 pounds of marijuana, of which he claimed *no* knowledge, would *not* have enhanced defense counsels' ability to impeach Zambrano or enabled them to make arguments they otherwise could *not* have made. The impeachment value was merely cumulative.

2.

Because the evidence was *not* material, we need not reach whether the Government had a duty to disclose the contents of the DEA's confidential report. Accordingly, we reject Appellants' assertion that a new trial is warranted because of the Government's negligence or bad faith.

Therefore, the district court did *not* abuse its discretion in denying the mistrial motions.

III.

For the foregoing reasons, the judgment is

*AFFIRMED.*

15