# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-40008
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
November 3, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff-Appellee

v.

MARVIN LEWAYNE MOODY, also known as Spain,

Defendant-Appellant

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:13-CR-248-4

Before HIGGINBOTHAM, PRADO, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Marvin Lewayne Moody appeals his convictions for conspiracy to possess with intent to distribute heroin, conspiracy to possess with intent to distribute cocaine, and possession of a firearm in furtherance of a drug trafficking crime. He contends that (1) venue was not proper in the Eastern District of Texas; (2) there is insufficient evidence to support his convictions; (3) he received ineffective assistance of counsel; and (4) there was a material variance between

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

the number of conspiracies charged and proven.  Finding no merit to Moody's contentions, we affirm.

Moody argues that venue was improper in the Eastern District of Texas because he did not live there, did not receive drugs from a source there, did not conduct conspiracy business there, and did not visit the district during the course of the conspiracy.  Rather, he asserts that the Government attempted to improperly manufacture venue by luring him from St. Louis to the Eastern District through unindicted-co-conspirator-turned-informant Raphael Risher, who was Moody's primary heroin and cocaine supplier.

The Government argues that we should not address the venue challenge because Moody failed to raise the issue in the district court.  Under Federal Rule of Criminal Procedure 12(b)(3), venue challenges must be raised  by the time of trial; under a 2014 amendment to that rule, "a court" is allowed to consider an untimely venue challenge for "good cause."  FED. R. CRIM. P. 12(c)(3).  We need not reach the question of whether such good cause must be shown in the district court or whether this issue can be raised for the first time on appeal because, assuming arguendo Moody can raise an untimely challenge to venue on appeal, his challenge lacks merit.

"In cases involving conspiracy offenses, venue is proper in any district where the agreement was formed or an overt act occurred." *United States v. Garcia Mendoza*, 587 F.3d 682, 686 (5th Cir. 2009) (internal quotation marks and citation omitted).  A finding of proper venue may be predicated on evidence of "any single act that initiated, perpetuated, or completed the crime." *Id*.  The record establishes a number of overt acts occurring in the Eastern District that perpetuated the charged heroin and cocaine distribution conspiracy, including meetings between conspiracy members and undercover federal agents posing as drug suppliers, a staged buy-and-bust, the transporting of heroin and

cocaine through the district, and the delivery of a half kilogram of heroin to Risher by fellow conspirator Willy Jackson.  Any one of those acts sufficed to make venue in the Eastern District proper.  *See Garcia Mendoza*, 587 F.3d at 686-87; *United States v. Marable*, 574 F.2d 224, 230 (5th Cir. 1978).  That Moody never personally set foot in the Eastern District is of no moment.  *See United States v. Rodriguez-Lopez*, 756 F.3d 422, 430 (5th Cir. 2014).  Moreover, this court has not recognized the concept of "manufactured venue."  *Cf. United States v. Al-Talib*, 55 F.3d 923, 929 (4th Cir. 1995).  In any event, his arguments do not support such a claim.  The record establishes, by at least a preponderance of the evidence, that venue for Moody's prosecution was properly in the Eastern District of Texas.  *See Rodriguez-Lopez*, 756 F.3d at 430.  Accordingly, there was no basis for dismissing the case for improper venue.

Moody next contends that the evidence adduced at his trial was legally insufficient to support his convictions.  Because Moody failed to timely object to the insufficiency of the evidence, we review for plain error and will reverse only if there is a manifest miscarriage of justice.  *See United States v. Delgado*, 672 F.3d 320, 330-31 (5th Cir. 2012) (en banc).  Under that standard, we may reverse Moody's convictions only if "the record is devoid of evidence pointing to guilt or contains evidence on a key element of the offense that is so tenuous that a conviction would be shocking."  *Id.* at 331 (internal quotation marks, citation, and emphasis omitted).  We consider the evidence in the light most favorable to the verdict, giving the Government the benefit of all reasonable inferences and credibility choices.  *Id.* at 332.

First, Moody contends that the evidence fails to prove that he possessed the modified AR-15 rifle found in his bedroom during his arrest "in furtherance of" a drug trafficking crime.  *See* 18 U.S.C. § 924(c)(1)(A).  The trial testimony,

however, established that Moody conducted large-scale heroin and cocaine transactions in the house where he kept the rifle; that the rifle was readily accessible; that it had been modified in order to make loading and firing more efficient; that Moody could not lawfully possess such a rifle because he had previous felony convictions; that Moody had failed to register the rifle despite its having a barrel less than 16 inches in length; that the rifle was loaded with a full magazine at the time of Moody's arrest; and that it was located in close proximity to narcotics hidden under Moody's bed and also to possible cash proceeds from drug sales. *See United States v. Ceballos-Torres*, 218 F.3d 409, 414-15 (5th Cir. 2000); *United States v. Holley*, 831 F.3d 322, 329-30 (5th Cir. 2016). Therefore, the record is not devoid of evidence supporting Moody's conviction for possessing a firearm in furtherance of a drug trafficking offense, and the resulting verdict was not a manifest miscarriage of justice. *See Delgado*, 672 F.3d at 331.

Second, Moody argues that the evidence fails to establish that he was part of a conspiracy to distribute cocaine because no cocaine was actually seized during the investigation. This argument is misplaced; the crime of conspiracy to possess a controlled substance does not require actual possession of the controlled substance. *See United States v. Ballard*, 586 F.2d 1060, 1066 (5th Cir. 1978). Rather, "[t]he crime of conspiracy is complete upon the formation of the illegal agreement." *United States v. Pietri*, 683 F.2d 877, 879 (5th Cir. 1982). To that end, recorded phone conversations between Moody and Risher showed the existence of an agreement to distribute cocaine for profit. *See United States v. Medina*, 161 F.3d 867, 872 (5th Cir. 1998). Testimony from multiple witnesses further established that Moody and others knowingly and voluntarily joined the illegal agreement. *See id.* Moody received several large shipments of cocaine from Risher, via Jackson, which he then distributed

to users in St. Louis through a network of dealers. In exchange, Risher received cash payments from Moody, which he directed to Alex Gonzalez in order to obtain more cocaine. The record, therefore, is not devoid of evidence supporting Moody's conviction for conspiracy to possess with intent to distribute cocaine, and the resulting verdict was not a manifest miscarriage of justice. *See Delgado*, 672 F.3d at 331.

Much of the same evidence supporting the verdict on the cocaine conspiracy charge also supports Moody's conviction for conspiracy to possess with intent to distribute heroin. Moody, however, argues that Risher's and Jackson's trial testimony tying him to the heroin conspiracy should have been disregarded by the jury as incredible because their assertions that Jackson, on one occasion, witnessed Moody mix poor quality heroin with fentanyl were contradicted by forensic testing showing the heroin in question to be unadulterated. This is important, Moody contends, because it suggests that Risher and Jackson "manufactured" evidence linking him to the conspiracy. Moody mischaracterizes the relevant testimony; neither witness claimed that Jackson had observed Moody mixing fentanyl and heroin.[1] Risher's and Jackson's testimony was not incredible, and the jury could rely on it in determining Moody's guilt. *See United States v. White*, 219 F.3d 442, 448 (5th Cir. 2000). As Moody does not contend that the record is otherwise devoid of evidence supporting his conviction for conspiracy to possess with intent to distribute heroin, he fails to show that the resulting verdict was a manifest miscarriage of justice. *See Delgado*, 672 F.3d at 331.

Next, Moody asserts that his trial counsel was ineffective for failing to

---

[1] Instead, the testimony was that Jackson actually observed Moody scooping a substance from a canister into the package he gave Jackson to take back to Texas. By contrast, the fentanyl conversation was a telephone discussion about using fentanyl to improve heroin potency.

No. 16-40008

move for a judgment of acquittal on the firearm charge after the close of the Government's case and failing to reurge a motion for acquittal on the conspiracy charges at the close of all evidence.  We generally will not consider the merits of an ineffective assistance of counsel claim on direct appeal, *see United States v. Isgar*, 739 F.3d 829, 841 (5th Cir. 2014), although we may do so "in rare cases in which the record allows [us] to fairly evaluate the merits of the claim," *Massaro v. United States*, 538 U.S. 500, 503-09 (2003) (internal quotation marks and citation omitted).  We decline to consider Moody's ineffective assistance claim at this time, without prejudice to his ability to reurge it on collateral review, which is the preferred avenue.  *See id.*; *United States v. Freeze*, 707 F.2d 132, 139 (5th Cir. 1983).

Lastly, Moody contends that a material variance existed because the trial evidence does not support the jury's finding that there was a single conspiracy.  *See United States v. Mitchell*, 484 F.3d 762, 769 (5th Cir. 2007); *United States v. Delgado*, 401 F.3d 290, 295 (5th Cir. 2005).  Rather, he asserts that there were four separate conspiracies, two involving heroin and two involving cocaine, and that he was implicated, at best, in two of them.  We need not determine whether a material variance existed in this case because, even if it did, the evidence clearly established Moody's involvement in at least one of the proved conspiracies.  *See Mitchell*, 484 F.3d at 770.  Accordingly, any variance did not prejudice Moody's substantial rights.  *See Delgado*, 401 F.3d at 295.

The judgment of the district court is AFFIRMED.

6