# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 2, 2026

Lyle W. Cayce
Clerk

No. 24-50745

———————

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

ATORIUS MARQUIS WILLIAMS; DEMONTA DANIELS,

*Defendants—Appellants*,

CONSOLIDATED WITH

———————

No. 24-50769

———————

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

TRASHAWN LAMAR ALEXANDER

*Defendant—Appellant*.

_____

Appeals from the United States District Court
for the Western District of Texas
USDC Nos. 6:20-CR-155-3,
6:20-CR-155-4, 6:20-CR-155-5

_____

Before WIENER, HAYNES, and GRAVES, *Circuit Judges*.

PER CURIAM:*

These consolidated cases arise from final criminal judgments and sentences against Atorius Marquis Williams, Demonta Daniels, and Trashawn Lamar Alexander (collectively, "Defendants"). Defendants were indicted for various charges related to their involvement with a criminal organization referred to as "Killers with Aggression" (hereinafter "KWA"), including various murders and robberies. The district court held a jury trial, the jury found Defendants guilty on all counts, and the district court sentenced Defendants to terms including life imprisonment. On appeal, Defendants assert that the district court's jury instructions on the firearms charges against them were defective, and Alexander argues that the evidence was legally insufficient to establish a "pattern of racketeering activity" for his charge under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962. We AFFIRM.

## I.    Background

Per the operative indictment, KWA was a criminal "organization engaged in and affecting interstate and foreign commerce by, among other things, conspiracy to distribute controlled substances and conspiracy to rob persons engaged in the distribution of controlled substances," and which "historically encompassed" the "East Temple" area of Temple, Texas. In

_____

* This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

2

No. 24-50745
c/w No. 24-50769

October 2020, Defendants, alongside seven other individuals, were indicted for multiple counts related to their involvement with KWA. The district court designated this matter a "complex case" in December 2020 and tolled the applicable speedy trial provisions. A first superseding indictment was filed in October 2023, and a second superseding indictment was filed against Defendants in December 2023.[1]

In this operative indictment, a grand jury charged Defendants with eight counts: (1) Count One, which charged Defendants with violating 18 U.S.C. § 1962(d) by conspiring to conduct the affairs of KWA through a pattern of racketeering activity consisting of multiple overt acts, including murders and robberies; (2) Count Two, which charged Defendants with violating 18 U.S.C. § 1951(a) by conspiring to affect commerce by robbery, which consisted of multiple overt acts that included murders and robberies; (3) Count Three, which charged Williams with violating 18 U.S.C. §§ 2 and 1951(a) by affecting commerce by robbing an individual named David Jefferson; (4) Count Four, which charged Williams with violating 18 U.S.C. §§ 2 and 924(c)(1)(A)(ii) by brandishing a firearm in relation to a crime of violence (i.e., the robbery of Jefferson); (5) Count Five, which charged Defendants with violating 18 U.S.C. §§ 2 and 1951(a) by affecting commerce by robbing an individual named Eric Ramos; (6) Count Six, which charged Defendants with violating 18 U.S.C. §§ 2 and 924(c)(1)(A)(ii) by brandishing a firearm in relation to a crime of violence (i.e., the robbery of Ramos); (7) Count Seven, which charged Alexander with violating 18 U.S.C. §§ 2 and 1951(a) by affecting commerce by robbing an individual named Rodrick Howard; and (8) Count Eight, which charged Alexander with violating 18

_____

[1] The Government notes that, by the filing of the second superseding indictment, all other defendants besides Williams, Daniels, and Alexander had pleaded guilty. The only individuals charged in the second superseding indictment were Defendants.

U.S.C. §§ 2 and 924(c)(1)(A)(iii) by discharging a firearm in relation to a crime of violence (i.e., the robbery of Howard). Defendants pleaded not guilty.

The district court held a jury trial for Defendants beginning on February 6, 2024. At trial, the Government presented testimony from various people including individuals involved with KWA and investigating law enforcement officers. Alexander and Daniels called witnesses who disputed certain factual issues relevant to their charges, while Williams rested without offering testimony. The Government and Defendants delivered closing arguments, and the district court charged the jury, on February 13, 2024. The jury reached its verdict one day later, convicting Defendants of all counts for which they were charged in the operative indictment. The district court sentenced Defendants as follows: (A) as to Alexander, life imprisonment on each of Counts One, Six, and Eight and twenty-years imprisonment on each of Counts Two, Five, and Seven, with Counts One, Two, Five, and Seven to run concurrently and Counts Six and Eight to run consecutively to all other counts; (B) as to Williams, life imprisonment on each of Counts One, Four, and Six and twenty-years imprisonment on each of Counts Two, Three, and Five, with Counts One, Two, Three, and Five to run concurrently and Counts Four and Six to run consecutively to all other counts; and (C) as to Daniels, life imprisonment on each of Counts One and Six and twenty-years imprisonment on Counts Two and Five, with Counts One, Two, and Five to run concurrently and Count Six to run consecutively to all other counts. Defendants timely appealed.

No. 24-50745
c/w No. 24-50769

## II.    Jurisdiction

The district court had jurisdiction over these criminal cases under 18 U.S.C. § 3231. As these are appeals from final judgments and sentences,[2] we have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742. *See United States v. Warren*, 986 F.3d 557, 562 (5th Cir. 2021).

## III.    Discussion

On appeal, Alexander advances two main arguments: that his RICO conviction must be reversed because the evidence was legally insufficient to prove a "pattern of racketeering" activity, and that his firearms convictions under 18 U.S.C. § 924(c) must be vacated because of defective jury instructions. Williams and Daniels also contend that their firearms convictions under 18 U.S.C. § 924(c) should be reversed due to erroneous jury instructions and seek to adopt their co-appellants' arguments via Federal Rule of Appellate Procedure 28(i). We begin with Defendants' jury instruction arguments.

### A. Jury Instructions

"We review jury instructions for abuse of discretion if the alleged error is preserved below." *United States v. Fuchs*, 467 F.3d 889, 900 (5th Cir. 2006). However, "jury instructions that were not objected to are reviewed for plain error." *Id.* Under our plain error standard of review, "we have discretion to reverse a forfeited error only if there is (1) error, (2) that is plain, and (3) that affects substantial rights," and, even where these three elements are satisfied, "we may only exercise this discretion if (4) the error seriously

---

[2] The sentencing issue is not separate but just part of the judgments which we address, so we need not address sentencing separately.

5

No. 24-50745
c/w No. 24-50769

affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Ricard*, 922 F.3d 639, 655 (5th Cir. 2019) (citation modified).

Alexander states that he raised the jury instruction "issue in his [Federal] Rule [of Criminal Procedure] 29 motion," for judgment of acquittal, "and also at sentencing," thus preserving this alleged error and triggering harmless error review. The record below indicates that Defendants all submitted oral motions for judgment of acquittal on the day the Government and Defendants rested, and the district court initially denied these motions before, one day later, partially granting Alexander's motion and ordering the removal of certain references to Alexander in an alleged overt act from the jury charge.[3] However, on appeal, Alexander points not to this initial Rule 29 motion but instead to a subsequent motion for acquittal, which he submitted after the jury rendered its verdict, for when he raised the issue of the jury instructions for his firearm convictions.[4] But, "[a] party who objects to any portion of the instructions . . . *must* inform the court of the specific objection and the grounds for the objection *before* the jury retires to deliberate." Fᴇᴅ. R. Cʀɪᴍ. P. 30(d) (emphasis added). Defendants do not show that they properly objected to the allegedly particularly defective jury

---

[3] The issues raised before the jury charge are not what are being claimed about the jury charge here.

[4] Williams and Daniels also filed post-trial Rule 29 motions for judgment of acquittal in which they raised this issue.

No. 24-50745
c/w No. 24-50769

instructions they are challenging for their firearms charges during trial, before the jury began deliberations. Thus, we apply plain error review.[5, 6]

In the operative indictment, Defendants were all charged with at least one violation of 18 U.S.C. § 924(c) for "brandish[ing]," and in Alexander's case "discharg[ing]," firearms in relation to certain crimes of violence.[7] On appeal, Defendants argue that their convictions for these charges should be reversed because the district court failed to properly instruct the jury on "brandish[ing]" or "discharg[ing]" and instead improperly instructed the jury on the "use" or "carrying" of firearms. Defendants assert that charges for "brandishing" or "discharging" firearms trigger higher mandatory minimum prison terms (seven and ten years, respectively) than charges for the "use" or "carrying" of firearms, which trigger five-year mandatory

---

[5] *See United States v. Green*, 47 F.4th 279, 289 (5th Cir. 2022) ("Although Selgas asserted in his opening brief that our review is de novo, our review is for plain error because Selgas did not object to the jury instructions in the district court until his Rule 33 motion for a new trial and thus did not preserve the issue for appeal."); *United States v. Campbell*, 775 F.3d 664, 668 (5th Cir. 2014) (applying plain error review where "the essence of Campbell's appeal l[ay] in his" improper jury instruction contentions, and "Campbell's arguments on appeal were not properly preserved below as they were first raised at sentencing").

[6] Defendants assert that the applicable standard of review for their jury instruction challenges is harmless error. While Defendants are correct that we have explained that "[a]ny error in a jury instruction is subject to harmless-error review," we have made clear that "[j]ury instructions that were not timely objected to are reviewed for plain error." *United States v. Lamartiniere*, 100 F.4th 625, 636 (5th Cir. 2024), *cert. denied*, 145 S. Ct. 1069 (2025).

[7] In particular: Count Four charged Williams, "aided and abetted by others," with "knowingly brandish[ing] a firearm during and in relation to a crime of violence," i.e., the robbery of Jefferson, in violation of 18 U.S.C. §§ 2 and 924(c)(1)(A)(ii); Count Six charged Defendants, "aided and abetted by each other," with "knowingly brandish[ing] a firearm during and in relation to a crime of violence," i.e., the robbery of Ramos, in violation of 18 U.S.C. §§ 2 and 924(c)(1)(A)(ii); and Count Eight charged Alexander, "aided and abetted by others," with "knowingly discharg[ing] a firearm during and in relation to a crime of violence," i.e., the robbery of Howard, in violation of 18 U.S.C. §§ 2 and 924(c)(1)(A)(iii).

7

minimum prison terms. Thus, they contend, the jury was unable to properly make the specific findings needed for their 18 U.S.C. § 924(c) charges, and the district court's jury instructions violated their Sixth Amendment rights.[8]

We conclude that the district court's jury instructions on Defendants' 18 U.S.C. § 924(c) charges were not plainly erroneous. While Defendants aver that the district court's jury instructions on these charges were erroneous, Alexander concedes that the district court *did* "initially referenc[e] the charged conduct" in the jury instructions, even if, as he argues, its later instructions were incorrect. Indeed, the record reflects that the district court instructed the jury that it was "[t]here to decide whether the government has proved beyond a reasonable doubt that the defendants are guilty of any of the crimes charged," and that Defendants were "not on trial for any act, conduct, or offense not alleged in the indictment." To that end, the instructions reviewed the charges against Defendants from the operative indictment and expressly noted that Williams was charged with "brandish[ing] a firearm" under Count Four, Defendants were charged with "brandish[ing] a firearm" under Count Six, and Alexander was charged with "discharg[ing] a firearm" under Count Eight.

In addition to reviewing the charges from the operative indictment, the district court provided "explanation[s] of law for" these counts, as well as "definitions for" their "elements." The district court did not define "brandish" or "discharge," though it did define "[u]se" and "carried" for these charges, and it explained that, to find Defendants guilty of these charges, they "must be convinced . . . beyond a reasonable doubt" of the elements, including that Defendants "used or carried" firearms in relation

---

[8] Alexander separately appears to contend that we should vacate and remand on these claims for resentencing without analyzing for harmless error. However, as previously noted, we apply plain error review here. *See Fuchs*, 467 F.3d at 900.

to the crimes of violence. The jury instructions also explained that the Government needed to "prove" that Williams (for Count Four), Defendants (for Count Six), and Alexander (for Count Eight) "actively employed" a firearm to "prove" that they had "used" a firearm "in relation to a crime of violence," and it defined "[a]ctive employment" as including, *inter alia*, "brandishing" or "firing" a firearm.

When we assess jury instructions, "we *must* consider the jury charge *as a whole* and reverse only if the *entire* charge leaves us with the substantial and ineradicable doubt whether the jury has been properly guided in its deliberations." *United States v. Capistrano*, 74 F.4th 756, 769 (5th Cir. 2023) (emphasis added) (citation modified). To that end, the Supreme Court has "repeatedly . . . cautioned that instructions must be evaluated not in isolation but in the context of the entire charge." *Jones v. United States*, 527 U.S. 373, 391 (1999). While the district court's instructions on the firearms counts could have been clearer, reviewing the "jury charge as a whole," *Capistrano*, 74 F.4th at 769 (citation omitted), we conclude that the district court's jury instructions do not warrant reversal, as the district court properly instructed the jury that Defendants were only on trial for conduct alleged in the operative indictment, and that, per the indictment, Counts Four, Six, and Eight charged Defendants (either individually or collectively) with "brandish[ing]" or "discharg[ing]" firearms in relation to certain crimes of violence. We conclude that any issues in the jury instructions on these counts do not rise to the point of plain error that merits our exercising the "discretion to reverse." *Ricard*, 922 F.3d at 655; *see United States v. DeLeon*, 484 F. App'x 920, 930 (5th Cir. 2012) (per curiam) ("While the district court's instructions could have been more clear, we conclude that any error

No. 24-50745
c/w No. 24-50769

did not rise to the level of plain error, because when considered in their entirety, the instructions did not omit any elements of the offense.").[9]

### B.  Sufficiency of the Evidence

Before turning to the sufficiency of the evidence arguments before us, we note that, on appeal, neither Williams nor Daniels substantively argues that their RICO convictions must be reversed for lack of sufficient evidence. Instead, they invoke Federal Rule of Appellate Procedure 28(i) to adopt the "arguments of [their] co-appellants," insofar as such arguments "apply to" them. Williams and Daniels do not specify the arguments they wish to adopt, but, to the extent they seek to "adopt by reference [the] part of [Alexander's] brief" in which Alexander urges his sufficiency argument, FED. R. APP. P. 28(i), the Government correctly notes that "sufficiency of the evidence challenges are fact-specific and thus cannot be adopted," *United States v. Age*, 136 F.4th 193, 213 n.5 (5th Cir.), *cert. denied*, 146 S. Ct. 615 (2025). Williams and Daniels thus cannot adopt Alexander's sufficiency of the evidence arguments, and they have forfeited any arguments on this issue for their own RICO convictions. *See id.*; *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021) ("A party forfeits an argument . . . by failing to adequately brief the argument on appeal.").

Where a defendant moves for a judgment of acquittal before the case is submitted to the jury, we review de novo that defendant's sufficiency of the evidence claim. *United States v. Ollison*, 555 F.3d 152, 158 (5th Cir. 2009). As Alexander timely moved for judgment of acquittal both during and after trial, we apply de novo review here. *See id.* However, our de novo review in this context "is highly deferential to the verdict." *Id.* at 160 (citation

_____

[9] Although *DeLeon* is "not controlling precedent," it "may be [cited as] persuasive authority." *Ballard v. Burton*, 444 F.3d 391, 401 n.7 (citing 5TH CIR. R. 47.5.4).

No. 24-50745
c/w No. 24-50769

modified); *see United States v. Cabello*, 33 F.4th 281, 288 (5th Cir. 2022) ("Preserved challenges to the sufficiency of the evidence get de novo review, with a heavy thumb on the scale in favor of the verdict."). Indeed, "we view the evidence and all inferences to be drawn from it in the light most favorable to the verdict to determine if a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[10] *United States v. Delgado*, 401 F.3d 290, 296 (5th Cir. 2005) (citation omitted).

Alexander argues that "[t]he evidence reveal[ed] only sporadic criminal episodes clustered around discrete territorial objectives, not the systematic ongoing criminal conduct that RICO targets." In particular, Alexander avers that the evidence only demonstrated "alleged predicate acts" that "occurred primarily within a four-month period" in late 2017 and early 2018, "followed by complete dormancy for seventeen months," and that there were "finite territorial goals limited to the 'East Temple' area." Alexander asserts that this evidence fails to satisfy either "closed-ended continuity" or "open-ended continuity," and that the evidence was insufficient to prove the required "pattern of racketeering activity" needed for his RICO charge.

Alexander's appellate brief's argument section on this issue contains numerous conclusory statements, many of which are unsupported by case law, and it fails to cite the record (e.g., to demonstrate the insufficiency of the trial evidence), save for a lone citation quoting the operative indictment. To the extent Alexander has not forfeited his arguments on this issue for

---

[10] The Government urges us to apply plain error review to Alexander's sufficiency of the evidence argument. However, as it concedes, doing so would require we "reassess" our "approach to error preservation." We decline the Government's invitation and apply de novo review here in line with our precedent applying such review where a defendant timely moves for judgment of acquittal. *See Ollison*, 555 F.3d at 158.

inadequate briefing,[11] we, viewing the evidence in the light most favorable to the jury's verdict, conclude that "a rational trier of fact could have found the essential elements of [Alexander's RICO] crime beyond a reasonable doubt." *Delgado*, 401 F.3d at 296 (citation omitted).

The operative indictment charged Defendants, including Alexander, with conspiring to violate 18 U.S.C. § 1962(c), in violation of 18 U.S.C. § 1962(d). To prove this § 1962(d) charge, "the Government must prove" that Alexander "simply *conspired* to violate § 1962(c), and no more." *United States v. Nieto*, 721 F.3d 357, 368 (5th Cir. 2013) (emphasis added). We require the Government to prove two factors for such a charge: "(1) that two or more people agreed to commit a substantive RICO offense and (2) that the defendant knew of and agreed to the overall objective of the RICO offense. These elements may be established by circumstantial evidence." *Id.* (citation omitted). Meanwhile, to prove a racketeering § 1962(c) charge, "the Government must prove" four elements: "(1) the existence of an enterprise that affects interstate or foreign commerce, (2) that the defendant was employed by or associated with the enterprise, (3) that the defendant participated in the conduct of the enterprise's affairs, and (4) that the participation was through a pattern of racketeering activity." *Id.* at 365–66 (citation modified). "To establish th[e] pattern [factor], a plaintiff must show both a relationship between the predicate offenses . . . and the threat of

---

[11] *See Rollins*, 8 F.4th at 397. For instance, Alexander cites no case law or record authority in his argument section that there was an "[a]bsence of systematic criminal business operations" in this matter, or for his proposition that "[t]he finite victim pool targeting 'persons engaged in the distribution of controlled substances' in a specific area creates natural boundaries." Alexander has forfeited arguments to these effects. *See United States v. Stalnaker*, 571 F.3d 428, 439–40 (5th Cir. 2009) (concluding, where appellant "describe[d] a laundry list of grievances" but did "not *fully explain* them and often d[id] not *cite the record* or *relevant law*," that appellant "waived for inadequate briefing" "most of the matters" (emphasis added)).

continuing activity." *Malvino v. Delluniversita*, 840 F.3d 223, 231 (5th Cir. 2016) (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 239 (1989)).

Alexander does not contest that the predicate acts alleged in the operative indictment were related. Instead, in Alexander's own words, his "sufficiency challenge . . . centers on whether clustered criminal acts separated by a 17-month dormancy period can satisfy RICO's pattern requirement when those acts accomplished discrete territorial objectives." Alexander acknowledges that "[t]he evidence reveal[ed] . . . criminal episodes" during a four-month period in late 2017 and early 2018 and an incident in June 2019, though he characterizes such acts as "sporadic" and inadequate to prove a RICO violation. However, Alexander cites no case in which we have treated a pattern of criminal acts like those in this case as inadequate to satisfy RICO's requirements. Indeed, aside from one of our cases he cites for the standard of review, the lone case Alexander cites from our court in his argument section on this issue is *D&T Partners, L.L.C. v. Baymark Partners Management, L.L.C.*, 98 F.4th 198 (5th Cir. 2024).[12]

It is true that, through RICO, "Congress sought to address '*long-term* unlawful conduct,' not fraudulent acts 'extending over a few weeks or months.'" *D&T Partners*, 98 F.4th at 206 (quoting *H.J. Inc.*, 492 U.S. at 242). However, "we have presumed that *more than a year* of racketeering acts constitute a substantial period of time." *Id.* (emphasis added) (citation modified). The Supreme Court has also instructed that "nothing in RICO exempts an enterprise whose associates engage in spurts of activity

---

[12] Unlike this case, which went to trial on criminal charges, in *D&T Partners* we considered the district court's grant of defendants' motion to dismiss private plaintiffs' complaint. *See* 98 F.4th at 203–04.

No. 24-50745
c/w No. 24-50769

*punctuated by periods of quiescence*." *Boyle v. United States*, 556 U.S. 938, 948 (2009) (emphasis added).

Here, viewing the evidence and drawing all inferences "in the light most favorable to the verdict," *Delgado*, 401 F.3d at 296, demonstrates that a rational jury could have found that the evidence satisfied RICO's continuity requirement. Alexander concedes that "[t]he evidence reveal[ed]" various "criminal episodes" that occurred during a "four-month period," as well as an "incident" some "seventeen months" later. The indictment alleged, and the Government (as it notes) put on multiple witnesses who spoke to, these predicate acts including multiple robberies and murders that occurred between September 2017 and June 2019. The "period[] of quiescence" Alexander highlights during this timeframe is of no moment. *Boyle*, 556 U.S. at 948. We "presume[]" that this year-plus period of racketeering actions "constitute[s] a substantial period of time" and satisfies RICO's continuity requirement.[13] *D&T Partners*, 98 F.4th at 206 (citation modified).

## IV.  Conclusion

For the foregoing reasons, we AFFIRM.

---

[13] We also conclude that Alexander has failed to substantiate his contention that "[t]erritorial objectives confirm" that this case involved a "finite criminal scheme with built-in limitations." He cites no case from our court supporting this contention, nor, as the Government correctly observes, does he cite record evidence that KWA controlled all the territory it intended to control. As with other of his arguments on this issue, Alexander has forfeited his assertions to this effect. *See Rollins*, 8 F.4th at 397; *Stalnaker*, 571 F.3d at 439–40.